# SMITH v. MINE & SMELTER SUPPLY CO.

No. 1756.  Decided January 15, 1907 (88 Pac. 683).

1. WITNESSES — REDIRECT EXAMINATION.—Plaintiff sued for damages caused by a blowing up of explosives stored by defendant in violation of an ordinance. A former salesman for defendant testified for plaintiff that three or four days before the accident he saw about 2,000 explosives in defendant's vault. On cross-examination he stated that they were being sold daily, and he did not know how many had been sold between the time he saw them and the accident. *Held,* that on redirect examination witness could be asked if defendant would have likely sold 2,000 or 3,000 explosives within two or three days.

2. EXPLOSIVES — NEGLIGENCE — STORING DANGEROUS EXPLOSIVES — ACTION—ADMISSIBILITY OF EVIDENCE.—Where plaintiff sued for damages caused by a blowing up of explosives kept by defendant in an open vault in violation of an ordinance prohibiting the storage within the city of any substance of greater explosive power than ordinary gunpowder, except that certain caps might be stored, when kept separate from all other explosives and in a vault, plaintiff should show the comparative explosive power of fulminate of mercury, a component part of the caps, and ordinary gunpowder.

3. DAMAGES—INJURY TO HOUSEHOLD GOODS—EVIDENCE AS TO COST.— Though the cost of household goods destroyed or damaged cannot be an independent basis for the recovery of damages, it may be considered in connection with testimony as to their actual value.[1]

4. EXPLOSIVES — NEGLIGENCE — STORING DANGEROUS EXPLOSIVES — VIOLATION OF ORDINANCE — NEGLIGENCE PER SE.—The violation of an ordinance regulating the storage of dangerous explosives, designed for the safety of life, limb, and property, constitutes negligence *per se.*[2]

5. SAME—STRUCTURE NOT A VAULT OR SAFE.—A brick structure entirely open on one side cannot be a vault or safe, within the meaning of an ordinance regulating the storage of dangerous explosives.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

---

[1] Johnson v. Railway Co., 7 Utah 346, 26 Pac. 926.
[2] Riley v. Rapid Transit Co., 10 Utah 428-440, 37 Pac. 681.

Action by Mrs. T. G. M. Smith against the Mine & Smelter Supply Company. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*Frank B. Stephens* and *Benner X. Smith* for appellant.

*A. L. Hoppaugh, D. B. Hempstead* and *S. H. Lewis* for respondent.

FRICK, J.

This is an action for damages for injury to and destruction of personal property, caused, as alleged, by the explosion of certain explosive substances kept and stored by defendant (hereinafter designated "appellant") in its place of business within the corporate limits of Salt Lake City. The complaint sets forth two causes of action—one for injury to a dwelling house, and another for injury to and destruction of personal property kept in the dwelling; and a recovery is sought upon general negligence, as well as upon the violation of the ordinances of said city, in storing the explosives. The complaint is too voluminous to be set forth, even in substance. The negligence, however, is in part charged in the following language: "That said defendants unlawfully, intentionally, carelessly, and contrary to the ordinances of Salt Lake City . . . placed in said storerooms, at said date and prior thereto, large quantities of powder, giant or Hercules powder caps, dynamite, explosive chemicals, acids, inflammable oils, etc." The particulars in which the ordinances were violated are alleged. The ordinances are also pleaded, and the violation thereof, and the occurrence of a fire in the building occupied by appellant, and the explosion, and the injury and damage consequent thereto to respondent's property. Those parts of the ordinance which may be necessary to a full understanding of the points hereinafter decided are as follows: "Giant or Hercules powder caps shall, in all cases, be kept separate from any kind of explosive powder; if kept at a powder maga-

zine, it shall be in a separate vault or safe away from all other explosives; if kept at a place of business, it shall be in a vault or safe away from all other explosives." Another section of the ordinances, among other things, provides: "And no person shall receive, keep, or store, or suffer to remain in any place within the limits of said city, any explosive substance having an explosive power greater than that of ordinary gunpowder." The answer was practically a general denial. Upon the issues thus presented there was a trial to a jury, which returned a verdict in favor of respondent, upon which the court rendered judgment, from which this appeal is prosecuted. The errors assigned are very numerous, and those deemed important we will consider hereafter.

The view we take of the case makes it unnecessary to make a full statement of the evidence, or to even state it in substance. We will, therefore, state such facts as may be necessary to illustrate the questions decided in connection therewith. After the respondent had produced evidence which tended to show the location of appellant's place of business, the destruction of said place of business by fire, the occurrence of one or more explosions in the part of the building destroyed by the fire and occupied by appellant, the force of the explosions, the storing by appellant in its place of business of large quantities of giant and Hercules powder caps and what are called "electric exploders," that those caps and explosives, coming in contact with fire or great heat, exploded with great force, and that the place where they were stored and kept by appellant was in an open brick vault without a door, and that the explosions occurred at the point where those explosives were being kept and stored, counsel for respondent, on redirect examination, asked a witness, who was an employee of appellant and familiar with its business and the conduct thereof in a general way, the following question: "And would the Mine & Smelter Supply Company have been likely at that time to have sold two or three thousand of those explosives within two or three days?"—to which counsel for appellant objected upon the following grounds. "A c incompetent and

calling for what this witness thinks the company is claimed to have done." The objection was overruled, and the witness answered: "No; they would not have been likely to sell that quantity of explosives within three or four days." The ruling of the court is assigned as error, and it is asserted that the answer was prejudicial. So that the full import of the ruling may be better understood, it is necessary to state that the witness had, on direct examination, testified that, before and up to the time of the fire and explosion, he had been in the employ of appellant as a salesman, that he was familiar with appellant's business, and that three or four days prior to the fire he had seen about 2,000 of the electric exploders, which he described as being used sometimes instead of giant and Hercules powder caps and for the same purpose, in a brick vault in which the explosive caps aforesaid were also being kept, and of which caps, he testified, there were in the vault aforesaid about 37,500. On cross-examination counsel for appellant, doubtless for the purpose of showing that the caps and electric exploders may not have been in the building or brick vault at the time of the fire, but had been sold, elicited from the witness the fact that both the caps and exploders were kept for sale by appellant, and that they were being sold in its business daily, or almost daily; that the witness did not know how many of them had been sold during the three or four days immediately preceding the fire. To meet the inference to be deduced from this testimony, the question set forth above was asked and answered. We cannot see in what way there was error in the overruling of the objection. It certainly was proper to show that the appellant kept those explosives in its place of business, and that it kept them in a place in violation of the ordinances of the city. We think, further, that it was proper, under the general allegation of negligence, to show substantially the foregoing facts, and that the explosives were dangerous. When, therefore, appellant, on cross-examination attempted to show sales of the explosives in the ordinary course of business of appellant, for the purpose of showing that some or all might have been sold, or at least

raising a doubt in respect thereto, we think it was proper for respondent to show that in the ordinary course of appellant's business such a number of a particular kind of explosives would not likely be sold within the three or four days. It was entirely within appellant's power to show that it had no explosives in stock at the time of the fire and the explosion, either because it had obtained none, or for the reason that it had sold them. The witness was a salesman employed by appellant in its business, knew of its transactions in the ordinary course of business in a general way at least, and he was thus qualified to testify in respect to what would be the usual and ordinary course of that business in respect to the matter inquired into. We think the ruling was right, and therefore this assignment cannot be sustained.

Another assignment of error is that the court, over the objection of appellant, permitted a witness to testify respecting the comparative explosive power between fulminate of mercury, a component part of the giant and Hercules powder caps, and ordinary gunpowder. The objection is seemingly based upon the ground that by the ordinance appellant was permitted to carry such caps in stock, if kept separate and apart from other explosives and in a vault or safe. We think, however, that the evidence was admissible, if elicited from a witness qualified to testify upon the subject, which the witness was, upon another ground. The respondent sought to recover damages for injuries sustained by reason of the explosion of certain explosives kept by appellant on its premises. The ordinance, as we have seen, forbade the keeping or storing of any explosive substance on premises within the city limits of greater explosive power than ordinary gunpowder. It is true that appellant was permitted to keep giant and Hercules powder caps; but it was only permitted to keep them if it did so by placing them separate and apart from all other explosives within a vault or safe. The testimony showed, without conflict, that the caps were kept within brick walls, which had an opening and to which opening there was no door of any kind, thus leaving those caps and the electric exploders exposed from one side at least;

and thus the caps were not kept either separate and apart from other explosives, nor in a vault or safe such as was clearly contemplated by the ordinances. It followed, therefore, that the explosives were kept in violation of the latter ordinance, which forbade explosives to be kept or stored within the city at all, but, apart from this ordinance, in view that they were not kept in a vault or safe, simply resolved itself into keeping dangerous explosives upon the premises from which another suffered injury and damage. In order, therefore, to show the degree of care required in respect to the dangerous articles kept by appellant, we think it was proper to show the nature or character of the explosives; and this is all that was done. It therefore simply amounted to proving that the appellant was using its premises for the purpose of storing thereon highly dangerous substances which might cause injury to another's property. We think the evidence was clearly proper within the principles laid down in the following cases: *Bradford Glycerine Co. v. St. Mary's W. Mfg. Co.* (Ohio), 54 N. E. 528, 45 L. R. A. 658, 71 Am. St. Rep. 740; *Laflin-Rand Powder Co. v. Tearney* (Ill.), 23 N. E. 389, 7 L. R. A. 262, 19 Am. St. Rep. 34. This assignment must therefore likewise be overruled.

There are numerous assignments in respect to the admission of evidence as to the cost of articles destroyed by the fire and explosion caused thereby, and the cost of repair to injured articles. All of this evidence is of the same character and may be considered together. The errors complained of in this respect are more apparent than real. As regards the objection aimed at Mrs. Shipler, the daughter of respondent, it appears from her testimony that she lived with her mother prior to and at the time of the explosion and fire; that the house in which they lived was situated across the street from appellant's place of business; that her mother kept a boarding house, and that the force of the explosion carried bricks and other objects across the street and tore down a part of the walls of the kitchen, broke the windows and doors, and injured and destroyed the furniture, carpets, clothing, fixtures, kitchen utensils, and other property be-

longing to her mother.    The witness, after she had testified that she was present when most, if not all, of the articles testified to were bought, and personally knew their cost, was permitted to testify to the cost thereof so far as she personally knew it.    The court, however, did not permit her to give her judgment of the actual value of the articles after she had said that she did not know the value thereof at the time of the injury and destruction.    Moreover, the court ruled that the cost price was not the measure of recovery, but was admitted only in connection with other testimony of actual value.    The cost of an article may, or may not, be some evidence of its actual value.    If the article in question has a market value when fresh or new, and the time of inquiry is within a short, or reasonable, time after its purchase in the market, then the cost price, taken in connection with the use or wear of the article, usually affords some evidence, at least, of actual value.    Ordinarily the cost price is a fluctuating one, and depends upon so many extraneous conditions that the cost cannot be taken as the basis or measure of damage or loss, and for that reason the law has wisely provided that, whenever an article or thing in use has a known market value, this value, and no other must control as the measure of recovery.    In permitting evidence of the cost of the article in fixing its value, regard must therefore be had to all the conditions and circumstances; and where the time at which the cost is fixed, in view of all the circumstances, is too remote from the time of injury, that cost may not afford any guide whatever, and should not be permitted.    In such cases the present market value of the article when new, if it has no other market value, would afford a better guide as a starting-point, and the actual value of the article should be determined by deducting from the cost price such an amount as its past use and wear would reduce its value in comparison to a new article of like kind.    But in any case resort to the cost should be had only for the purpose of a starting-point, and as a means to ascertain the true or actual value of the article.    It is in this sense that the courts lay down the rule, as we understand it,

that cost is some evidence of value, and hence, in a proper case, may be admitted. The object of the law in all cases is to compensate the injured person for his loss—no more, no less. To attain this object, the rule of market value has been adopted as the one more nearly approximating the end in view. There are, however, exceptional cases where the rule cannot be applied to its full extent. When such is the case, the rule is to be followed as nearly as the circumstances of the case permit; but a party is not to be deprived of his property simply because his case may not fall within the regular rule governing the measure of damages.

There is another principle of law equally potent in the administration of justice, and that is that the best evidence of which the nature of the case admits, in view of all the circumstances, is proper in that particular case, unless, by some rule of law, a particular kind of evidence is required. While, in a limited sense, it may be said that worn or so-called second-hand household goods may have a market value, because they are sold by dealers, still the prices fixed and obtained by the dealers in such articles cannot be said to furnish a true test as the measure of damages. This clearly appears from the testimony of the second-hand dealer who was a witness in this case. In an ordinary home carpets and furniture of all kinds are usually bought to suit the taste of the buyer and to fit a particular place. They may be nearly new, or as good as new, when injured or destroyed. In a second-hand store the goods are bought principally because they can be obtained cheaper than new ones, and the person may, for that reason, buy an article when it neither suits his taste nor fits the place where it is to be used. The person selling usually is compelled to sell to the dealer, and the one buying will usually offer to pay only what he thinks the goods are worth to him, regardless of any price placed on them by the dealer. The witness, however, gave a description of the articles, when bought, how and where, and how long used. This was followed by the testimony of the mother, who was the owner of the articles, and who bought and paid for them. She

testified that she was familiar with the articles, knew of their actual condition, and what new ones cost to replace the ones destroyed. She thus qualified herself to testify to the actual value under any rule, by showing her acquaintance with the prices and with the articles in question, and stated that she personally knew the value thereof at the time they were injured and destroyed. It is true that on cross-examination she said that, in fixing the value, she based it on the cost, but explained that, in respect to such articles of which she fixed the cost as the value, they were just as good as new ones, and hence just as valuable. On others she fixed a different value. To illustrate: The daughter had testified that the kitchen range, which was practically destroyed by the explosion, cost one hundred dollars; but the mother fixed its value at the time it was destroyed at fifty dollars. The mother, in testifying to the value, thus based her judgment on cost, on use and wear, and upon the condition of the articles at the time of their destruction. Upon a careful examination of all the evidence contained in the bill of exceptions we are convinced that the court guarded appellant's rights and gave it all the law allowed, and it could not require more.

The circumstances of this case in respect to proving actual damages were exceptional. It may be true that, if respondent had all the articles that were destroyed by the explosion piled up in her dooryard or house and offered to sell them, she might not have realized the amount the jury allowed her. She, however, had them, not for disposal in that way, but for daily use in her home, and we think she was entitled to recover the actual value in accordance with the rules laid down by the court. The cost price was used as a starting-point or as a basis merely from which to determine the actual value. This was clearly the theory on which the court proceeded, and we think his rulings were not only fair under all the circumstances, but in accordance with the principles of law governing exceptional cases like the one at bar, and that they are supported by the authorities. (*Shea v. Hudson*, 165 Mass. 43, 42 N. E. 114; *Hawver v. Bell*, 141

N. Y. 140, 36 N. E. 6; *Hangen v. Hachemeister,* 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137, 11 Am. St. Rep. 691; *Sullivan v. Lear* [Fla.], 11 Am. St. Rep. 388; *Hausman v. Mulhevan,* 68 Minn. 48, 70 N. W. 866; Abbott's Trial Ev. (2 Ed.) 378, 379; Lawson on Exp. and Opinion Ev. 481, 482; *Johnson v. Railroad,* 7 Utah 346, 26 Pac. 926.) Moreover, it is apparent from an examination of the evidence, the rulings of the court, and the instructions given, that the jury fully understood the rule that the court sought to apply in respect to the measure of damages. While the testimony of the respondent fixed the actual value of the articles of personal property destroyed and the cost of repair at $1,870.50, the jury allowed her only $1,109. They thus took into account the depreciation of the articles in view of the use they were put to and in view of their condition, all of which was in evidence before them. This assignment should be overruled.

The next assignment refers to an instruction given by the court. The court instructed the jury in substance that, if they found from the evidence that the appellant had violated the city ordinance in respect to keeping or storing explosives, such violation constituted negligence *per se.* Counsel insist that such is not the law; that it would be *prima facie* negligence at most. As to whether a violation of a law or ordinance constitutes negligence *per se* depends in a large measure upon the nature of the law or ordinance. When a standard of duty or care is fixed by law or ordinance, and such law or ordinance has reference to the safety of life, limb, or property, then, as a matter of necessity, a violation of such law or ordinance constitutes negligence. In any case the standard is usually defined as that degree of care that men of ordinary care and prudence usually exercise. But, when the standard is fixed by law or ordinance, how can one be heard to say that he exercised care in exceeding, or in refraining to comply with, the standard fixed? There is, in such cases, no comparison to be made. Care and prudence alone cannot excuse. Exceeding or disregarding the standard of care imposed must be held to be negli-

gence, if it is anything. If it is held not to be such *per se,* it simply amounts to this: That it is for the jury to say whether, in violating a law or ordinance fixing a standard of care to be observed the law was carefully or negligently violated. The violation, thus in and of itself, would mean nothing, and one would be permitted to violate the law with impunity, provided the jury find it to have been carefully done. Neither is it an answer to say that the violation may have been caused by the act of God or unavoidable accident. If such be the case, then the act constituted no violation in law, and when there is no violation there would be no negligence arising out of such act or acts alone, and the jury would be required to find whether the act or acts complained of constituted a violation, as above indicated, or not. If they found that the law was disregarded, but that it was occasioned by a higher power or through unavoidable accident, then there would be no violation by the person charged, and hence no negligence imputable to him from that act alone. But if they found that he had violated the law by his own act, or by the acts of others chargeable to him, then there would be negligence *per se.* This negligence, however, standing alone, is not civilly actionable. The negligence must in all cases be found to be the proximate cause of the injury. The court instructed the jury that unless they found that the negligence, if they found negligence as above stated, was the proximate cause of the injury complained of, the respondent could not recover. This, we think, is a correct statement of the law pertaining to ordinances such as the one in question here. We do not hold that a violation of all laws or ordinances constitutes negligence *per se,* but we do hold that the violation of ordinances designed for the safety of life, limb, or property, does constitute negligence *per se;* and this, we think, is supported by the clear weight of authority. See 21 Am. & Eng. Enc. L. (2 Ed.), 478, where the cases upon the subject are collected. This is, we think, likewise the logic of *Riley v. Rapid Transit Co.,* 10 Utah 428-440, 37 Pac. 681. There was, therefore, no error in the charge complained of.

Another assignment of error is that the court erred in charging the jury that the place where the giant and Hercules powder caps and the electric exploders were kept by appellant did not constitute a vault or safe within the meaning of the ordinances. Here, again, the object of the ordinance must be kept in view. The object clearly was to keep these explosives and dangerous substances entirely apart from all other substances, to make them as safe as possible, and to prevent their explosion by fire or other inflammable substances coming in contact with the explosives. The place, as described by the witnesses, where these explosives were kept, was entirely open on one side. All the other vaults described were vastly different. They were all steel-lined and had iron doors. The evidence was all one way, and there was, therefore, nothing for the court to do but to declare either that the place did or did not constitute a vault or safe within the meaning of the ordinance. In any case, we think, as to what is meant by a law or ordinance is a question of law for the court. When the evidence is in conflict as to the character of the place, the court would have to instruct hypothetically. The instruction still, however, would have to define what constituted a vault or safe, and direct the jury that, if they found the facts to conform to the definition, then, and then only, could they find that there was a vault or safe as contemplated by the ordinance. We think the instruction contained a correct statement of the law, in view of the facts and circumstances of this case.

While there are other errors assigned, they either fall within the principles already discussed, or are not of sufficient importance to require separate consideration.

It follows, therefore, that the judgment should be, and it accordingly is, affirmed, with costs.

McCARTY, C. J., and STRAUP, J., concur.