# JENSEN v. UTAH LIGHT AND RAILWAY CO.

## No. 2427.   Decided April 24, 1913 (132 Pac. 8).

1. APPEAL AND ERROR—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—SUFFICIENCY. In a personal injury action against a street railway company, where plaintiff requested an instruction telling the jury that a violation of a municipal ordinance fixing the rate of speed of the car was negligence *per se*, and the court modified that instruction by making it read that it was evidence of negligence and by adding a phrase at the end, an exception to the refusal of the court to give the requested instruction and to the giving of the same as modified, sufficiently informed the lower court and the defendant of the objection to warrant review on appeal.   (Page 420.)

2. STREET RAILROADS—INJURIES TO PERSONS ON TRACKS—NEGLIGENCE—VIOLATION OF ORDINANCE. Where a municipal ordinance fixes the rate of speed at which street cars may be operated and provides for a system of signals, a violation of the ordinance constitutes negligence *per se*.[1]   (Page 421.)

3. STREET RAILROADS—INJURIES TO PERSONS ON TRACKS—INSTRUCTIONS. In a personal injury action by one run down by a street car, an instruction that the operation of the car in excess of the speed fixed by the ordinance was evidence of negligence cannot be justified on the ground that all the evidence showed a violation of the ordinance; it being apparent that the instruction did not enunciate the true rule that such a violation constituted negligence *per se*.   (Page 423.)

4. STREET RAILROADS—OPERATION—DUTY TOWARDS PEDESTRIANS. The granting of a franchise to operate street cars upon a public street does not withdraw the street from public use and travel, and, except as to the preferential right of passage, the rights of the public, even as to the portion occupied by street car tracks, are equal to that of the street car company, and so the servants of a company cannot assume, as a matter of law, that travelers will not go upon the tracks or go dangerously near them, but must maintain a continual watch for travelers.   (Page 423.)

5. TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE. A charge must state the law applicable to the facts in evidence of the particular case.   (Page 424.)

6. STREET RAILROADS—INJURIES TO PERSONS ON TRACKS—ACTIONS—INSTRUCTIONS. In an action by one run down by a street car which was being operated in excess of the speed fixed by ordi-

[1] Smith v. Mine & S. S. Co., 32 Utah, 21, 88 Pac. 683; Rogers v. Railroad, 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876.

nance and without the signals required, a charge that the motorman had a right to assume, as a matter of law, that travelers in the street would avoid the street car tracks and not go dangerously near them, or if upon them or in a place of danger would leave them in time to avoid accident, is erroneous; it not only appearing that plaintiff was endeavoring to move mail bags from a place of danger near the tracks, but that the operatives of the street car were themselves violating the law. (Page 424.)

7. STREET RAILROADS—INJURIES TO PERSONS ON TRACKS—DUTY TO LOOK AND LISTEN. A traveler crossing a street car track is not bound, as a matter of law, to look and listen, but is merely required to use ordinary care which is such a degree of care as careful and prudent persons would use under like circumstances, consequently in an action by one run down by a street car operated at a great rate of speed, while plaintiff was attempting to move mail bags from the tracks to a place of safety, a charge that he was required to use his senses of sight and hearing to ascertain whether a car was approaching, and it was his duty to use them continuously, was improper as imposing a higher degree of care than the law required.[2]   (Page 425.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Oscar H. Jensen against Utah Light and Railway Company.

Judgment for defendant.   Plaintiff appeals.

REVERSED AND REMANDED.

*Richards, Richards* and *Ferry* for appellant.

*P. L. Williams, Geo. H. Smith* and *J. V. Lyle* for respondent.

STRAUP, J.

This is an action to recover damages for personal injuries alleged to have been sustained through the defendant's negligence.   The injury occurred on Second South Street in

[2] Spiking v. Ry. & Power Co., 33 Utah, 313, 93 Pac. 838; Oswald v. Utah L. & Ry. Co., 39 Utah, 245, 117 Pac. 46; Pratt v. Light & Ry. Co., 38 Utah, 500, 113 Pac. 1032.

Salt Lake City, at or near the west crossing on Eighth East Street. Second South Street, including parkings on each side, is 132 feet wide. The paved and traveled portion of the street, excluding the parkings, is seventy-two feet and four inches. Second South Street runs east and west. In the center of it the defendant maintained two street car tracks, each five feet and two inches in width. The distance between the tracks is six feet and nine inches. From the south rail of the south track to the south parking is twenty-seven feet and eight inches. Cars operated on the north track ran west towards the city, on the south towards the east. The service along this street was a ten-minute service. In the evening extra cars were also run between the regular trips. The tracks extended east two blocks to Tenth East Street, thence south on Tenth East. The blocks are 660 feet long. The distance from Tenth East Street to the place of the accident is about 1644 feet. North of Second South and west of Eighth East, or at the southeast corner of the block, is located a substation post office. Mail sacks containing mail were conveyed by the defendant to and from this station on its street cars. The sacks were received and discharged on the north side of the north track, at or near the west crossing of Eighth East, and about in front of the substation. Certain cars only carried mail, so that it would not necessarily be the first car passing after mail sacks had been deposited in the street that would take the sacks.

The accident happened on the 21st day of December, 1910, at about 6:20 p. m. The mail at that time of the year, owing to the approach of Christmas, was heavy. It had snowed during the greater part of the day, and was snowing and blowing at the time of the accident. There were electric lights at the crossing and along the street. Looking east at the point of the accident, an approaching car could be seen two blocks away, or to the point of the intersection of Second South and Tenth East, where the street car tracks ran to the south. The presence of a person at the

place of the accident could also be seen by operatives of street cars coming from the east.

The plaintiff was an employee in the mail service at the substation. On the day of the accident he closed the station, and, in company with a lady acquaintance, left it at about 6:20 p. m. They intended to go south along the west crossing of Eighth East and Second South Streets. Before crossing the street car tracks, the plaintiff, so he testified, looked both ways for approaching street cars and saw none. After they had crossed the tracks and had reached the parking on the south, a point twenty-seven feet and eight inches from the south track, it occurred to the plaintiff that a number of mail sacks, eight or twelve, had been deposited and irregularly piled in the street just north of the north rail of the north track and in such close proximity thereto as likely to be struck by passing cars. He remarked to his companion that many of the sacks contained Christmas packages and were so heavy that she could not lift one of them. They retraced their steps to the mail sacks, a distance of about forty-four feet, to remove the sacks out of danger. Before doing so, and before again crossing the street car tracks, the plaintiff, so he testified, again looked at the point twenty-seven feet and eight inches south of the south track both ways for approaching cars, but neither saw nor heard any. He testified that they walked back rather slowly, at a speed of about two miles an hour, and went directly to the sacks. There he took a position just north of the north rail of the north track, facing a little north of west, and removed some of the sacks (he would not say whether he had removed more than one) when he was struck by a street car coming from the east. His companion testified that they went directly to the sacks, and that she picked one up and set it down, when she also was struck by the same car. Evidence was also given on behalf of the plaintiff that the car was operated at a speed of thirty miles an hour, and that no signals or warning of any kind were given of its approach. The plaintiff further testified that after leaving the south side of the street, where he had looked both ways for

approaching cars before recrossing the tracks and going to the mail sacks, he did not again look for approaching cars before he was struck, or at least did not look towards the east.

The plaintiff also put in evidence an ordinance of Salt Lake City which provided that it was "unlawful" to operate a street car at a rate of speed to exceed twelve miles an hour; required the sounding of a gong on street cars "at all times and on all streets at the first appearance of danger to any person, animal or vehicle," required the conductor, motorman, or other person in charge of each car to keep "a vigilant watch for all teams, vehicles, persons on foot, and especially for children, either on the track or tracks, or near the same, or moving towards the same, and on the first appearance of danger to such team, vehicle, or person, said car shall be placed under careful control, and shall be stopped in the shortest time and space possible;" and provided that any person, firm, company, or corporation, or any employee, etc., violating any of the provisions of the ordinance was guilty of a misdemeanor and punishable.

The defendant offered no evidence. It rested when the plaintiff rested, and requested a direction of a verdict in its favor. The court refused this and submitted the case to the jury. A verdict was rendered in favor of the defendant. The plaintiff appeals. He predicates error on the charge and the court's refusal to charge as requested by him. The first relates to this: The plaintiff requested the court to charge that the operation of the car in approaching the crossing at a rate of speed greater than twelve miles an hour and omitting to sound the gong or to give other sufficient warning was negligence; the court refused to so charge, and charged that such violations were but evidence of negligence.

The defendant at the threshold asserts that proper exceptions were not taken to such rulings, and that they, therefore, are not reviewable.

The plaintiff, by his request No. 1, requested this:

"You are instructed that the ordinance in force at the time plaintiff was injured provided that it should be unlawful to run a street car at the point where the car collided with the plaintiff at a greater rate of speed than twelve miles an hour, and that all cars·should be provided with a gong, bell, or whistle, and that such gong should be sounded at all times and on all streets at the first appearance of danger to any person, animal, or vehicle. And if you believe from the evidence that, at the time of the injury complained of by plaintiff; the defendant ran its car in violation of the provisions of said ordinance in that it approached the crossing in question at a greater rate of speed than twelve miles per hour, or that it failed to sound the gong, bell, or whistle, or that it failed to give other or sufficient warning of its approach, that would be negligence on the part of the defendant; and if you further find from the evidence that the motorman who was in charge of said car saw, or by the exercise of ordinary and reasonable care and diligence on his part in keeping a vigilant lookout ahead for persons who might be on or dangerously near the defendant's track, where it crosses over such street crossing, could have seen the plaintiff and the danger he was in in time to have stopped the said car and avoided colliding with him, but that said car struck the plaintiff and injured him, then your verdict should be in favor of the plaintiff."

The court, in paragraph nine of the charge, gave the request word for word, except the word "that would be *negligence* on the part of the defendant," in lieu of which the court inserted "that would be *evidence of negligence* on the part of the defendant," and except, at the concluding portion of the request and after the words, "such car struck the plaintiff and injured him," the court inserted the words, "without fault on his part." The court further, in such particular, in paragraph 20, charged: "You are instructed that if you should find from the evidence in this case that the defendant company did not give any signal or warning of the approach of its car at the time and place where the accident happened, or that at such time and place it ran its

car in excess of twelve miles an hour, yet these facts would be no more than evidence of negligence." The exception is: "The plaintiff excepts to the refusal of the court to give his requested instruction No. 1, as requested, and to the giving of the same as modified by the court." Since the request was given word for word, except in the particulars noted, to what particular thing or things did the plaintiff direct the attention of the court and that of his adversary by excepting "to the refusal of the court to charge as requested in his request No. 1, and to the giving of the same as modified?" Clearly to the action of the court modifying the request. How was it modified? By charging that the violation of the ordinance in the enumerated particulars was but evidence of negligence, instead of charging, as was requested, that it was negligence, and inserting, at the concluding portion of the request, the words, "without fault on his part." We think neither the court nor respondent ought to have been ignorant of the exact complaint made by the plaintiff in such particular. We think the rulings reviewable.

Was, therefore, the charge correct that the violation of the ordinance in the enumerated particulars was but "evidence of negligence," "no more than evidence of negligence?" We think not.

In the case of *Smith v. Mine & S. S. Co.*, 32 Utah, 21, 88 Pac. 683, Mr. Justice Frick for the court said:

"When a standard of duty or care is fixed by law or ordinance, and such law or ordinance has reference to the safety of life, limb, or property, then, as a matter of necessity, a violation of such law or ordinance constitutes negligence. In any case the standard is usually defined as that degree of care that men of ordinary care or prudence usually exercise. But, when the standard is fixed by law or ordinance, how can one be heard to say that he exercised care in exceeding, or in refraining to comply with, the standard fixed? There is, in such cases, no comparison to be made. Care and prudence alone cannot excuse. Exceeding or disregarding the standard of care imposed must be held to be negligence, if it is anything. If it is held not to be such *per se*, it simply amounts to this: That it is for the jury to say whether, in violating a law or ordinance fixing a standard of care to be observed, the law was carefully or negligently violated. The violation, thus in and of itself, would mean nothing, and one would be permitted to violate the law with impunity, provided the jury find it to have been carefully done."

The respondent, however, urges that the ordinance in the Smith Case and the ordinance here are different; that in the one the ordinance pertained to the storage of explosives, things inherently dangerous, in the other to the operation of street cars, a business not inherently dangerous. For that reason, says the respondent, may it be said the violation of the one is negligence *per se,* and the violation of the other but evidence of negligence. To support this we are referred to particular language in the Smith Case, where it is said:

"We do not hold that a violation of all laws or ordinances constitutes negligence *per se,* but we do hold that the violation of ordinances designed for the safety of life, limb, or property does constitute negligence *per se;* and this, we think, is supported by the clear weight of authority."

This language does not help but makes against the respondent. For what purpose was the ordinance here "designed?" The answer is manifest. For the safety of life, limb, and property. There can be no doubt of that. And in the case of *Rogers v. Railroad,* 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876, Mr. Justice Frick, again speaking for the court, said:

"Counsel argue that the failure to give the statutory signals constitutes negligence *per se,* and therefore respondent's negligence was established, and, this being so, the necessary proof entitling appellants to recover existed and could be defeated only by proof of contributory negligence. It may be conceded that the failure to comply with the statute with regard to warning signals generally constitutes negligence *per se,* as was held by this court in Smith v. Min. & S. S. Co."

It is thus seen that the principle under consideration was applied not only to a violation of an ordinance such as was involved in the Smith Case, but also to the violation of a statute requiring the giving of signals in the operation of steam railroads.

It is further contended that, since the evidence with respect to the violation of the ordinance was without conflict, the charge that a violation of the ordinance was "evidence

of negligence," "no more than evidence of negligence," was equivalent to a charge that such violation was negligence, or, since "the acts and facts being shown and not disputed, the legal result is the same." The distinction is self-evident; in the one, the court itself declares the violation to be negligence; in the other, the question is left to the jury to determine whether the violation is or is not negligence. When the fact of such violation is found, whether on conflicting or undisputed evidence matters not, it would seem to be of considerable difference whether the court pronounces the effect of the violation to be negligence as matter of law, or leaves the question to the jury to determine the effect, as matter of fact, whether the violation does or does not constitute negligence.

The court at the request of the defendant charged:

"You are instructed that in the operation of its cars the defendant company, through its motorman, is entitled to assume that an adult person on, near, or approaching the track is in full possession of his senses, and that he knows the danger, and that he will yield precedence to the car, and that he will exercise ordinary care and diligence to take care of himself, and that he will not go upon the track or place himself dangerously near it, or, if near it or on it, will leave his position of danger in time to protect himself and avoid injury. And, being entitled to assume these things, the motormen of such cars are not required to slacken the speed thereof or to stop as soon as they perceive such persons approaching the track, or upon or near it; but they may act upon the belief and assumption that such person will not go upon the track or go dangerously near it, or if upon it, or in a place of danger, will leave such place of danger in time to avoid accident." Exceptions were taken to this.

The assumptions are here stated as strongly as the rule in such particular has been stated in the operation of steam railroads on a private right of way. We think the charge is not only inapplicable to the undisputed facts of the case but is also erroneous.

The granting of a franchise to operate street cars upon public streets of a city does not withdraw the streets from public use and travel. Except the preferential right of passage, the rights of the public to the use of the street for travel, even as to the portion of it occupied by street car tracks, are equal to that of the street car operators. To charge, as was here done, that a motorman operating a street car upon a public street may, as matter of law, assume and act upon the assumption that a person, in using and traveling the street, "will not go upon the track or go dangerously near it, or if upon it, or in a place of danger, will leave such place of danger in time to avoid accident," and for that reason a motorman need not slacken the speed of the car (although it is operated at a rate of speed of thirty miles an hour) on "perceiving persons approaching the track or upon or near it," is violative of this principle. To the contrary, street car operatives must assume that persons in using and traveling a public street, on which street cars are operated, may be upon that portion of the street occupied by the street car tracks, or near them, or may cross the tracks, not only at crossings, but at any place along the street between the crossings, just as the traveling public must know and assume that cars are operated on the tracks and may come along at any time. To assert the contrary is to assert that the traveling public has no right to use or be upon or near that portion of the street occupied by street car tracks.

The charge is in the very teeth of the ordinance, which expressly imposes a duty on the conductor, motorman, or other person in charge of a car to keep a vigilant watch for teams, vehicles, persons on foot, either on the track or tracks or near the same, or moving towards the same, and is especially harmful, in view of the undisputed evidence, that the car which struck the plaintiff was operated in violation of the ordinance at a speed of thirty miles an hour. The charge of what the motorman had the right to assume and act upon was not even restricted to a lawful or careful operation of the car. Of course one operating a car in a lawful and in a reasonably careful man-

ner, and upon giving proper and sufficient warning signals
of its approach, may assume that a pedestrian or other trav-
eler approaching the track will stop to let the car pass, or if
upon or near the track will leave it, and thus the car opera-
tive is ordinarily not required to slacken the speed of the
car, unless something is made to appear that to proceed will
likely result in a collision or injury.  But that is not what
the court charged.· It gave one or two of these elements
to the exclusion of others of equal importance.  A charge
is supposed to be a statement of the law applicable to the
facts in evidence of the particular case.  It is so given to
the jury to be by them so applied.  The evidence here with-
out dispute shows that the car was operated in violation of
the ordinance at a speed of thirty miles an hour, and without
warning of its approach.  These were the particular facts,
and no other, to which the jury were required to apply the
charge of what the motorman had the right to assume and
act upon.  It would seem rather bold to assert, and still
more difficult to maintain the assertion, that one so operat-
ing a car negligently and in violation of law (a wrongdoer)
had, as matter of law, the right to indulge in and to act
upon all assumptions and presumptions of one operating a
car lawfully and carefully.

The court, ·after charging that the plaintiff was required
to use ordinary care for his own safety and protection, and
after also charging at the defendant's request that "a duty
was imposed on him before going upon or attempting to
cross, or before taking up a position dangerously near the
track, to make a vigilant use of his senses of sight and
hearing," further, also at the defendant's request, charged
that "the duty of a traveler to make a vigilant use of his
*senses of sight and hearing for the purpose of ascer-*·
*taining whether a car is approaching* before attempt-
ing to cross the street car tracks or to take up a posi-
tion so near thereto as to be in danger is a continuous one;"
that "even though you might find from the evidence that the
defendant, at the time and place of the accident, did not
give warning of the approach of its car, or that it did run

its car in excess of twelve miles an hour, yet if you find from the evidence that the plaintiff by a vigilant use of his *senses of sight and hearing would have seen or known of the approach of the car* before going upon the track, or getting in a place of danger, and that his failure so to do proximately contributed to the accident, then your verdict should nevertheless be for the defendant;" that "in ascertaining and determining whether or not the plaintiff exercised reasonable care for his own safety, and to that end made a vigilant use of his senses of sight and hearing, you are entitled to and should take into consideration the physical facts and circumstances existing at the time and place of the accident. And if you find from the evidence that the physical facts and circumstances were such that a person situated as the plaintiff was would have seen or heard the car approaching, had he exercised his *senses of sight and hearing to ascertain whether one was approaching,* it would be your duty to, under such circumstances, find that the plaintiff did not exercise his *senses of sight and hearing as the law requires,* and your finding on this issue should be for the defendant." Exceptions were taken to the charge in these particulars.

From the repeated language of the charge that a duty is imposed upon a pedestrian before crossing or attempting to cross a street railway track, or going near or upon it, to use his senses of *sight and hearing to ascertain whether a car is approaching,* and that such duty was continuous, what meaning is conveyed? We think to look and listen. The proposition is the same, but stated in different words. The court not only imposed the duty to look and listen, but also to continue to look and listen, for the court expressly charged the jury, not that a continuous duty to use ordinary care was imposed on the traveler, but that the duty to make a *vigilant use of his senses of sight and hearing to ascertain whether a car is approaching* was a continuous one. Again applying the charge to the facts of the case, what meaning was conveyed to the jury? That the plaintiff in approaching or crossing the track, and taking a position near it in removing the mail sacks, was required to

continuously look and listen for approaching cars, to continuously use his senses of sight and hearing to ascertain whether a car was approaching. He, at a point about twenty-eight feet south of the south rail of the track, and before recrossing the tracks and going to the mail sacks, looked both ways for approaching cars. None were in sight. His vision to the east extended but two blocks, where the tracks turned to the south. A car running thirty miles an hour would cover that distance, about 1644 feet, including the intervening street crossings, in about two-thirds of a minute. It took the plaintiff about one-fourth of a minute to walk from the place he last looked to the mail sacks, a distance of forty-four feet. He removed one sack, and maybe more. His companion lifted but one and set it down when the plaintiff was struck by a car coming from the east. Under the charge, because the plaintiff did not look to the east within two-thirds of a minute, or a minute, or perhaps a minute and a half, just preceding the collision (did not look continuously), the jury were required to find him guilty of negligence as matter of law. Of course a person traveling upon or using streets on which street cars are operated must know and assume that cars may come along at any time, and is required to use ordinary care for his own safety and protection and to avoid accident and collision or coming in contact with moving cars, and must exercise care proportioned to the danger to be avoided and the consequences which may result from a want of it according to the particular circumstances surrounding him.

In determining whether the conduct of a given person came up to this standard, courts differ as to when the question of his negligence or care is one of fact or law. In some jurisdictions the rule is that the pedestrian, before crossing or attempting to cross a street railway track or go upon or near it is required to look both ways and to listen for approaching cars, and that conduct short of this is negligence. In such respects the same rule is laid down as is generally applied to the conduct of one in crossing or attempting to cross steam railroads. Other courts, as to the

conduct of one in crossing or attempting to cross street railway tracks, take a contrary view and hold that a failure to look or listen before crossing or attempting to cross or go upon or near street railway tracks is not *per se* negligence; that it generally is a question for the jury to determine whether he exercised ordinary care under the circumstances. This court is committed to the latter rule. (*Spiking v. Railway & Power Co.*, 33 Utah, 313, 93 Pac. 838; *Oswald v. Utah L. & Ry. Co.*, 39 Utah, 245, 117 Pac. 46.) Under such rule the test of whether a pedestrian was guilty of negligence is therefore not alone did he look and listen, but did he, under all the circumstances, use ordinary care— such a degree of care and prudence as a careful and prudent pedestrian ordinarily would use under like circumstances? Much of the confusion and diversity of opinion in the cases grow out of a desire to have the court lay down abstract rules declaring specific or particular acts or omissions to be negligence in all cases. Hence, instead of measuring the conduct of the pedestrian or traveler, in attempting to cross or go upon or near a street railway track, by the standard or test, did he, under all the circumstances, use ordinary care—the care and prudence a careful and prudent person ordinarily would use under similar circumstances? Efforts are made to measure it by tests of specific or particular acts or omissions. Did he look? Did he listen? At what point and when? One way or both ways? Continuously or intermittently? Did he stop? Did he run? Did he stand with his face or back to the track? Were his ears bundled? Did he sit in a covered wagon, etc.? In the very nature of things, and by reason of the essential variety and complexity of the cases, the question of whether specific or particular acts or omissions, is applied to a concrete case, constitute negligence is generally one of fact, not of law.

We say, and have heretofore said, that it is negligence to operate a car in violation of a valid statute or ordinance, because in such case the law itself has prescribed specific conduct and particular duties. The law, however, has not prescribed specific conduct or particular duties of a person

situated as was the plaintiff. In a majority of the cases the law gives no specific instructions or directions, and in the very nature of things cannot prescribe what men shall do, except the general requirement that every one must exercise ordinary care and prudence. In such instances the cases are rare where the court may abstractly declare specific acts or omissions to be negligence. For in determining whether one in a given case was or was not guilty of negligence, a standard must first be fixed of what a prudent person ordinarily would do under similar circumstances, by which standard the conduct of him charged with negligence must then be measured. Confessedly such questions are ordinarily for the jury. In cases of travelers crossing or attempting to cross steam railroad tracks, where the courts have declared a failure to look and listen for approaching cars to be negligence, though the law itself gave no such specific directions or instructions to look and listen, the courts themselves on the facts pronounced such conduct negligence on the theory that a failure to look and listen so clearly and conclusively shows negligence that reasonable and fair-minded men may not differ as to the conclusion to be drawn with respect to it. But that rule, for the reasons stated in the Spiking Case, is not applicable to cases of pedestrians and travelers crossing or attempting to cross or go upon or near street railway tracks. There may be cases where the conduct of one in such particulars may so clearly and conclusively show a want of ordinary care as to justify but one conclusion, as is illustrated in the case of *Pratt v. Light & Ry. Co.,* 38 Utah, 500, 113 Pac. 1032, where the plaintiff failed to look, and in *Oswald v. Utah L. & Ry. Co., supra,* where he had looked. But in neither was he denied recovery by measuring his conduct by an abstract rule, did he look? but by the standard, did he exercise ordinary care under the attendant facts and circumstances? upon which the conclusion was reached that, when his conduct was so considered in the light of all the facts and circumstances, it so clearly showed a want of ordinary care as to justify but one conclusion. These cases are in accord with the Spiking

Case, where the rule under consideration was clearly announced. The charge as has been seen, is in violation of it, for it imposes an absolute duty, as matter of law, on a pedestrian to continuously make a vigilant use of his senses of sight and hearing to ascertain whether a car is approaching. By the expression in the Spiking Case that plaintiff's intestate was required "to make use of his faculties for seeing and hearing," and "to make use of all his senses to avoid injury," was meant that he could not travel along the street, or attempt to cross or go upon or near street railway tracks, inattentively, listlessly, unobservantly, carelessly, and meet the requirement of ordinary care, and not that a specific duty, as matter of law, was imposed on him to make a vigilant use of his senses of sight and hearing to ascertain whether a car was approaching and certainly not to continuously make such a vigilant use of his senses of sight and hearing for such specific purpose. That is very evident from a mere reading of the opinion.

For the reasons given, we are of the opinion that the judgment of the court below ought to be reversed and the case remanded for a new trial. Such, therefore, is the order. Costs to appellant.

McCARTY, C. J., and FRICK, J., concur.