# NEWTON v. OREGON SHORT LINE RAILROAD CO.

### No. 2459.   Decided July 9, 1913 (134 Pac. 567).

1. RAILROADS—CROSSING ACCIDENT—NEGLIGENCE—SPEED. The operation of a railroad train over a city crossing at a speed in excess of the limit prescribed by an ordinance of the city at the time plaintiff's decedent was struck and killed at the crossing constituted negligence.[1]   (Page 225.)

2. NEGLIGENCE—PROXIMATE CAUSE. In order to recover for a negligent injury, the complaining party must show that the negligence complained of was the proximate cause of the injury.   (Page 225.)

3. RAILROADS—CONTRIBUTORY NEGLIGENCE—QUESTION OF LAW OR FACT. Whether decedent was negligent in going on a railroad track crossing is not a question of law for the court, unless reasonable men in viewing all the evidence could not arrive at different conclusions.   (Page 227.)

4. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE. In an action for death of plaintiff's decedent nearly twenty years of age, by being struck by an engine as he was standing between two tracks on a crossing waiting for another train to pass him in the daytime, whether he was negligent in failing to see the approaching engine, and, if so, whether such negligence was the proximate cause of his death, held for the jury.[2]   (Page 227.)

APPEAL from District Court, Third District; *Hon. George G. Armstrong,* Judge.

Action by Frank W. Newton, against Oregon Short Line Railroad Company.

Judgment for defendant.   Plaintiff appeals.

---

[1] Smith v. Mine & S. S. Co., 32 Utah, 21, 88 Pac. 683; Rogers v. Railroad Co., 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876; Jensen v. Utah L. & R. Co., 42 Utah, 415, 132 Pac. 8.

[2] Cromeenes v. Railroad Co., 37 Utah, 476, 109 Pac. 10, Ann. Cas. 1912C, 307; Lewis v. Rio Grande Wes. Ry. Co., 40 Utah, 483, 123 Pac. 97.

Rᴇᴠᴇʀsᴇᴅ ᴀɴᴅ ʀᴇᴍᴀɴᴅᴇᴅ ᴡɪᴛʜ ᴅɪʀᴇᴄᴛɪᴏɴs.

*Powers & Marioneaux* and *B. N. C. Stott* for appellant.

*P. L. Williams, George H. Smith* and *J. V. Lyle* for respondent.

FRICK, J.

This is an action brought by appellant, as father, to recover damages for the death of his son, a minor, which it is alleged was caused through the negligence of the respondent in operating its engine and cars at a street crossing in Salt Lake City. The acts and omissions constituting the negligence alleged in the complaint and relied on at the trial, in substance, are: That respondent carelessly and negligently ran and operated an engine, to which were attached two freight cars, in a certain street in Salt Lake City at a high and dangerous rate of speed, and at a speed in excess of that allowed by the ordinances of said city; that respondent carelessly and negligently failed and omitted to keep a lookout for persons about to cross or who might be on or near its tracks at the intersection of Eighth West and South Temple Streets where the accident occurred; that it negligently failed to keep said engine and cars under control so that they might be stopped in time to avoid injury to persons who were crossing, or were about to cross, or who were using the intersection of the streets aforesaid; that it negligently failed to give warning as said engine and cars were approaching the intersection aforesaid; and that by reason of said acts and omissions said engine and cars were run at, on, and over said minor son, causing his death. Respondent denied all the acts of negligence and pleaded contributory negligence on the part of the deceased.

The salient facts developed at the trial are, substantially, as follows: On the 6th day of August, 1910, at about five o'clock p. m., or a little later, Horatio W. Newton, the deceased, of the age of nineteen years and eleven months, was engaged in delivering a daily evening newspaper in the west-

ern part and a somewhat thickly populated portion of Salt Lake City; that in discharging his duties at the time in question he was passing north on Eighth West Street at or near the intersection of that street with South Temple Street, Eighth West Street running north and south, and South Temple Street running east and west; that there were two tracks located on South Temple Street, near the center thereof, running east and west, the outside rails of which were thirteen or fourteen feet apart; that the north track was used by the Saltair trains, and the south track was used jointly by the San Pedro, Los Angeles & Salt Lake Railroad Company and the respondent; that at the time stated a Saltair passenger train composed of some twelve or thirteen passenger cars loaded with passengers who were going to Saltair, a bathing resort in Great Salt Lake, was passing westward on the north track. while at the same time an engine with two freight cars attached was also being run westward on the south track, the latter being perhaps a little in the rear of the Saltair train, or running parallel with that train near the rear end thereof. The engine was being run backwards.

A young woman who lived on the east side of Eighth West Street, and south of the street intersection aforesaid heard the noise of the Saltair train as it was coming west, and she at once went to the north window of the house in which she was staying for the purpose, as she says, of seeing the passengers on that train. When she arrived at the window she looked in a northerly or northwesterly direction and observed the deceased standing near the east sidewalk on Eighth West Street, and at or near the north rail of the south track on which the engine was being run. He was then facing in a northerly or northwesterly direction and was standing astride of his bicycle apparently waiting, as she says, for the Saltair train to pass by him on the north track. She testified that the deceased stood in that position for from three to five minutes before the train passed him, but she frankly conceded that her judgment of time was unreliable. When she went to the window as aforesaid the Saltair train had not yet come within her field of vision, but she says she

was attracted to the window by its noise, and hence it must have appeared in an instant or two, or at least in a very short space of time after she arrived at the window. While the deceased was standing at the point, and in the attitude aforesaid, and as the Saltair train was passing by him, she saw some of the passengers waiving their hands and making motions towards him and also saw him waving his hands to them. In an instant thereafter she also observed an engine, with several cars, passing west on the south track, and at about that time the engine sounded several shrill blasts of the whistle, and its speed was apparently being checked somewhat, but it was running so fast that it almost instantly reached the point where the deceased was standing, whereupon he was struck, and she saw no more of him until a few minutes thereafter when she went to where he was lying dead near the engine, which had come to a stop within or along the west margin of Eighth West Street.

A little girl, about twelve years of age at the time of the accident, a sister of the young woman whose testimony we have just referred to, also saw the deceased standing between the tracks, but she says he was standing further west than her sister stated he was. The little girl further testified that before the deceased crossed over the south track she saw him riding a bicycle delivering papers, with a paper sack over his shoulder, and that in going north, and when he arrived at the south track, he got off the bicycle and walked across the south track, then turned west between the tracks and stood still near the north rail of the south track with one leg over the bicycle frame, and that in that position he stood apparently waiting for the Saltair train to pass by him. This witness also said that the deceased stood at the point in question for several minutes, but she too conceded that her judgment with respect to time was not good.. She further said that she saw the passengers waving their hands at the deceased and saw him doing the same thing towards the passengers; that she then noticed the engine with the two cars rapidly approaching the deceased; and that when she saw the engine was about to strike him she turned and ran

to her mother. There was also some evidence that, just before the Saltair train was seen coming west, the engine in question was seen to be standing still on the south track some distance to the east.

Two passengers who were riding on the Saltair train also testified with respect to what they observed. Both of them said that the deceased was standing on or near the sidewalk running north and south on Eighth West Street. One of them seems to have paid particular attention to the deceased from the time he first noticed him standing, as the witness says, in a perilous or dangerous position, to the time when he was struck. This witness was riding in an open car. He says that he first noticed the deceased when the car on which the witness was riding was about seventy feet east of the place where the deceased was standing. The witness also noticed the engine with the two cars running on the south track, and says that the engine was running at a rate of from fifteen to twenty miles an hour. The engine was running backward with the tender towards the deceased. When the witness first noticed the deceased the engine was about sixty feet to the rear or east of the car on which the witness was riding, and he at once perceived that unless the deceased changed his position he would be struck by the on-coming engine. The witness and others on the Saltair train who also saw his perilous position tried to attract the attention of the deceased by shouting and waving their hands to apprise him of his danger, but the latter did not seem to comprehend their purpose and simply waived his hands at them. At about this moment it seems the position of the deceased was also noticed by at least one of the two railroad men who were riding on the tender, one on the north and the other on the south side thereof, and immediately thereafter the engineer on the engine sounded several shrill blasts of the whistle, which were heard by about all of those who testified, but the deceased apparently did not hear them, at least he seemed perfectly oblivious to the danger threatening him. The testimony of this witness was on the main points corroborated by another passenger on the Saltair

train, and they both say that the whole transaction happened in a few moments or seconds of time. The testimony all is to the effect that the engine and cars were running at a rate of speed of from fifteen to twenty miles an hour, and that the efforts of the engineer to stop the engine, after he was apparently apprised of the danger to which the deceased was exposed, were all in vain, although he did stop the engine after the deceased was struck and before the cars had passed entirely beyond Eighth West Street.

From the whole evidence it is quite clear that if the deceased had looked to the east along the south track, he could have seen the engine approaching from the east for approximately a quarter of a mile, and that the engineer and trainmen could also have seen him in case he was standing where he was when the Saltair train passed him while the engine was passing over the distance aforesaid.

It is conceded that the sides of the cars projected over the outside rails of the tracks about two and one-half feet, leaving a clear space between the passing cars of about eight and one-half feet. From the evidence it is clear that the deceased was not standing on the south track, but that the rear wheel of his bicycle was so near the rail that the "running board" of the engine caught the wheel, and in doing so it seemed to jerk or pull the deceased in towards the engine, some part of which struck and killed him outright. Neither the cars nor the engine passed over any part of his body.

Appellant also proved that an ordinance of Salt Lake City prohibits the running of trains at a speed exceeding twelve miles per hour at the point of the accident. It also appeared that the passing Saltair train made much noise; that there was considerable commotion on the passenger train just before and about the time the deceased was struck, and that there were quite a number of trains and engines passing daily over the railroad tracks at the point where the accident occurred.

After producing the foregoing evidence the appellant rested, whereupon respondent also rested and moved the court to direct the jury to return a verdict in its favor for the rea-

son that the appellant had not shown that respondent's negligence in operating the engine and cars constituted the proximate cause of the accident, and further that from the evidence adduced it was apparent that the deceased was guilty of contributory negligence as a matter of law. The district court granted the motion, and the jury, as directed, returned a verdict for the respondent, upon which judgment was duly entered, from which this appeal is prosecuted. Counsel for the appellant insists that the court erred in directing a verdict.

It is settled law in this jurisdiction that the evidence, as it now stands, is conclusive that in operating the engine in question the respondent was guilty of negligence for the reason that it was run in excess of the speed limit permitted by the ordinances of Salt Lake City. (*Smith v. Mine & S. S. Co.*, 32 Utah, 21, 88 Pac. 683; *Rogers v. Railroad Co.*, 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876; *Jensen v. Utah L. & R. Co.*, 42 Utah, 415, 132 Pac. 8.)

Counsel for the respondent seek to defend the ruling of the district court upon the grounds: (1) That the negligence in operating the engine was not the proximate cause of the accident; (2) that the evidence affirmatively shows that it was the negligence of the deceased that caused, or at least directly contributed, to his death.

It is elementary law that in order to recover the complaining party must show that the negligence complained of was the proximate cause of the injury. In this connection it is contended that the facts of this case bring it within the rule laid down by this couurt in the cases of *Wilkinson v. Railroad Company*, 35 Utah, 110, 99 Pac. 466, *Bates v. Railroad*, 38 Utah, 568, 114 Pac. 527, and *Pratt v. Utah Light & Ry. Co.*, 38 Utah, 500, 113 Pac. 1032, where it was held that the plaintiffs were guilty of contributory negligence as matter of law. The Wilkinson Case was one where the plaintiff was struck by a backing engine just as he was about to pass onto and across

43 Utah 15

the railroad track at a street crossing in Ogden City, Utah. In that case the evidence left no doubt whatever of plaintiff's negligence in driving onto the track immediately ahead of the approaching engine, which by the slightest effort he could have seen approaching him had he looked or listened, which he said he did not do. Nor was there any doubt that his negligence was the proximate cause of the injury of which he complained. In that case we took great pains to point out, however, that it is only in very clear cases that the question of negligence can be determined as matter of law. In the opinion, referring to the question now under consideration, we said:

"No doubt there are crossing accidents where the injured person may recover notwithstanding that he has, constructively or technically speaking, failed to look or listen just before attempting to cross the railroad track at a particular place and under peculiar circumstances."

Where, therefore, the circumstances are such that it may reasonably be said that different minds, in viewing and considering the evidence, might arrive at different conclusions with respect to whether or not the injured person exercised ordinary care, the question of negligence must of necessity be determined as one of fact and not of law. While the substance of the foregoing statement is often found in the books and may be said to be a correct statement of the doctrine, yet such statements often leave the reader in doubt whether a given case falls within or without the doctrine. But, notwithstanding this, it is impossible to formulate a rule by which all cases can be determined.

All that can be said is that, unless the question of negligence is free from doubt, the court cannot pass upon it as a question of law; that is, if after considering all the evidence and the inferences that may be deduced therefrom the court is in doubt whether reasonable men, in viewing and considering all the evidence, might arrive at different conclusions, then this very doubt determines the question to be one of fact for the jury and not one

of law for the court. The court can pass upon the question of negligence only in clear cases. All others should be submitted to the jury. The reason of this is apparent from the fact that in this state all questions of fact are for the jury; and therefore, unless it is clear that in viewing and considering the evidence reasonable minds might not arrive at different conclusions, the case should go to the jury.

Counsel for respondent, however, contend that neither court nor jury could excuse the conduct of the deceased in taking a position so close to the south track and in remaining there for such a length of time without looking for an approaching train or engine, when, as the evidence shows in this case, such an engine or train might be passing on the track at most any time. This contention is based upon the assumption that the deceased assumed and remained in the position for the time stated by the young woman and her little sister, or at least for a considerable length of time. It should be remembered, however, that neither the young woman nor the little girl wanted to be bound by their estimate of the time given by them, and, if they are not to be bound by it, of course the jury could not be. In our judgment the jury, in viewing and considering the whole evidence and the inferences that could be deduced therefrom, could have found that the deceased, in approaching the tracks from the south, had looked to the east, and in doing so had seen the Saltair train approaching from that direction, but that he failed to see the engine on the south tracks, or if he saw it did not observe that it was coming towards him; that, when he arrived at the point where he was seen by the witnesses, the Saltair train was still some distance to the east of him, and not noticing the moving engine on the south track he remained where he was with the intention of permitting the Saltair train to pass him. Will any one seriously contend that one riding a bicycle in approaching a series of railroad tracks may not, without being guilty of negligence as matter of law, get off his wheel, and after going across some of the tracks stop and permit the approaching train on the

track to pass him, although he could have crossed ahead of it without being exposed to the danger of being struck by it? There is evidence in this case from which the jury would have the right to infer that the deceased had arrived at the point where he was seen standing only a few moments (that is, a very short time before the engine pulling the Saltair train reached the place opposite to where he stood); that he saw that train approaching from the east, and that he deemed it safer to wait for it to pass, although he could have crossed the track ahead of it; that he did not notice the engine on the south track pulling the cars coming towards him, and hence did not avoid it as he might have done; that the conduct of the passengers on the Saltair train, and the noise incident to the movement of the train, had a tendency to confuse him or to throw him off his guard with respect to other trains that might be in the vicinity, if any.

Of course if the jury should find that the deceased stood where the witnesses say he stood for the space of several minutes before the Saltair train passed him, that he paid no attention to his surroundings, and was not in any way affected by the actions of the passengers on the Saltair train, and should further find that under all the circumstances he was not exercising ordinary care for his own safety in that he failed to look for an approaching train, then they may find him guilty of negligence. In view of the circumstances and the inferences that may be deduced from the evidence, this question cannot be determined as a matter of law. Let us assume that the deceased saw the Saltair train approaching from the east when it was still 300 or more feet east of the crossing, and that he could have safely passed over the tracks ahead of that train, yet was he bound to do so? Certainly not. What he was bound to do was to use ordinary care, under all the circumstances, and before going on or near the track, unless he was excused for some good cause, was required to look and listen for an approaching train. That he looked and saw the Saltair train approaching there can be do doubt; that he stopped to let it pass is equally certain. As to that train, therefore, he had discharged his full

legal duty. Did he also do so with respect to the approaching engine on the south track? Counsel for the respondent contend that he did not. This contention, when considered as a question of fact to be argued and passed on by a jury, no doubt is permissible, but that the defendant failed to discharge his duty, under all the surrounding circumstances as a matter of law, the contention, in our judgment, is unsound. It was a question for the jury, and the court should have submitted the conduct of the deceased to them for their consideration, and in failing to do so we think it committed prejudicial error. It is true that a party desiring to go on or pass over a railroad track must not only look and listen for approacing trains, but ordinarily he should so look and listen as to make his vigilance effective. But whether the traveler must make his vigilance effective as against a multiplicity of dangers, when such threaten him at the same time and place, is, in cases like the one at bar, the very question that must be determined. If it is clear that the injured jerson failed to exercise ordinary care, the question is one of law; but, if the circumstances are such as to leave that question shrouded in doubt to the extent that different minds may fairly and honestly arrive at different conclusions, then it is a question of fact, and it is for the jury to say whether the injured person's conduct was that of an ordinarily careful and prudent man.

A large number of cases are cited by both sides in their respective briefs, but we need not review them, as that has been sufficiently done in the cases we have referred to. There is nothing in the cases cited by counsel from which it can be said that this case falls within the rule laid down in any one of the cases where we have held that negligence on the part of the injured person was established as a matter of law, but this case falls squarely within the doctrine announced in those cases where we held the question to be one of facts for the jury. In principle this case is not distinguishable from the case of *Cromeenes v. Railroad Company,* 37 Utah, 476, 109 Pac. 10, Ann. Cas. 1912C, 307. The only essential difference between that case and the one at

bar is that in that case the injured boy was only about twelve years old, and hence was clearly of immature age, while in this case the deceased must be treated as a young man (an adult), and further that in the Cromeenes Case the trains were approaching on the two tracks from opposite directions. The fact that in this case the engine and tender were running backwards may have had a tendency to confuse if not mislead the deceased much more than might have been the case if the engine had been run in the natural way. In looking up the track as the deceased saw the Saltair train approaching on the north track, he may likewise have noticed the rear end of the tender of the engine on the south track, but may not have noticed that it was moving towards him, or he may have seen it further up the track when he delivered papers or before crossing the track. If, therefore, the engine in question had been the only train he was required to see and avoid, the question might be different. In view of all the circumstances, the question with regard to whether or not the deceased exercised ordinary care or not is, to say the least, one of uncertainty and doubt, and hence must be submitted to the triers of fact for their determination.

What we have said also disposes of the question of proximate cause. That, too, is a question of fact to be determined by the jury under proper instructions. With regard to that question we simply refer to the case of *Lewis v. Rio Grande Wes. Ry. Co.*, 40 Utah 483 123 Pac. 97, and the cases there cited. The facts and circumstances of this case, we think, clearly bring it within the rule there announced.

For the reason stated, the judgment is reversed, and the cause remanded to the district court, with directions to grant a new trial.

McCARTY, C. J., and STRAUP, J., concur.