## Taylor v. Philadelphia Rural Transit Company, Appellant.

Argued October 6, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Jay B. Leopold,* and with him *Oscar Simon* and *Bernard J. O'Connell,* for appellant.

*James F. Masterson,* for appellee.

OPINION BY STADTFELD, J., February 1, 1934:

This was an action in trespass brought by Rotch Taylor, plaintiff, against the Philadelphia Rural Transit Company, defendant, for injuries sustained by the plaintiff in a collision with a bus of defendant company on March 13, 1931, at about 5:30 P. M. at Broad and Somerset Streets, in the City of Philadelphia. Broad Street extends north and south and is one of the principal traffic arteries of Philadelphia. It is 69 feet wide from curb to curb. Somerset Street runs east and west intersecting Broad Street at right angles. At the time of the accident there was no traffic control at this intersection.

The plaintiff was walking eastward on the north pavement of Somerset Street intending to cross Broad Street on the north crossing of Somerset Street. In the middle of Broad Street there is a safety island in the center of which is an electric light pole. At the time of the accident the streets were dry.

Plaintiff testified that as he approached the west curb of Broad Street he observed traffic was stopped

by a traffic semaphore operated by a traffic officer at Glenwood Avenue, which is the first street north of Somerset Street; that there was no traffic coming southward on Broad Street between Glenwood Avenue and Somerset Street; that two lanes of north bound traffic were stopped at Glenwood Avenue and extended southward to a point slightly below Somerset Street, leaving a space at the north crossing of Somerset Street open for pedestrians; that he walked from the west curb to the safety island where he stopped and looked, and there being no traffic moving northward on the east side of Broad Street he started to cross. Plaintiff testified that he proceeded over the crossing between these two lanes of stopped cars and as he passed the second lane he again looked and saw no traffic coming; that he took three to five steps which carried him three-quarters of the way across the northbound or eastern half of Broad Street and was struck by the front bumper of a bus of the defendant company and knocked unconscious. It was testified that the bus proceeded a distance of 50 to 75 feet after striking the plaintiff before coming to a stop.

The jury rendered a verdict for plaintiff in the sum of $1,500. A point for binding instructions in favor of defendant was refused, and a motion for judgment non obstante veredicto overruled, and judgment entered on the verdict. From that judgment this appeal was taken.

Plaintiff's case depended on his own testimony and that of one witness, Franklin McGinnis. An examination of plaintiff's testimony discloses the following situation: Glenwood Avenue is north of Somerset Street; Lehigh Avenue is south of Somerset Street. There were semaphore lights directing traffic at Glenwood Avenue and Lehigh Avenue; none at Somerset Street. When plaintiff arrived at the west curb of Broad Street he looked and saw the semaphore light

at Glenwood Avenue showing red, that is, stopping traffic on Broad Street; and there were no southbound cars in the street. He accordingly walked to the safety island in the middle of the street, beyond which were the two lanes of northbound cars which had been stopped by the traffic light at Glenwood Avenue, and which took up about half of the east or northbound side of the street. He testified that when he got to the safety island he "looked each way and *I saw the light turn at Glenwood* and I looked the other way before I started across and there was nothing coming . . . . . . I could see all the way to Lehigh, as far as that goes." He said he then walked between the automobiles forming the two lanes of traffic and had gone about three or four steps when "before I knew anything the bus was on top of me." "Q. You did not see the bus before that? A. Did not see him. No. Q. Did you look for any northbound traffic on that lane? A. Yes. Q. You did not see any? A. No, sir. Q. Then the same instant practically you looked, you were struck by this bus? A. Yes."

This evidence warrants no other conclusion than that although plaintiff had seen the traffic light at Glenwood Avenue turn from red to green, permitting the northbound traffic to proceed, he thought he could pass through the halted lanes of automobiles before they would move in obedience to the semaphore light, overlooking the fact that the rest of the northbound cartway of the street was open to traffic and subject to use by vehicles coming up from the rear.

Plaintiff's only witness as to the accident, Franklin McGinnis, a messenger boy, was at the time of the accident located on the same safety island as was the plaintiff. He details the conditions of traffic as described by the plaintiff, and to the collision between the plaintiff and defendant's bus. He testified in part as follows: "Q. How did Mr. Taylor get from the

light standard across the two lanes of traffic that were blocked all the way to Glenwood Avenue? A. There was enough space for Mr. Taylor to walk between the automobiles and if it had been wide enough I would have probably followed him; with the bicycle it was impossible for me to do so.''

The lower court in an opinion by WALSH, J., in overruling the motion for judgment non obstante veredicto, relied on the case of Byrne v. Schultz, 306 Pa. 427. That case discusses the duty of operators of motor vehicles at crossing intersections and quotes with approval from Clark v. Horowitz, 293 Pa. 441, 446: ''They (drivers) must have their cars under control, and if necessary bring them to a stop within the shortest possible distance: Johnson v. French, 291 Pa. 437, 439, and cases there cited. The fact that traffic is open will not relieve the driver from observance of this rule, or excuse the running down of a pedestrian, who at the time is committed to the crossing.'' We do not think that this case is controlling under the facts of the instant case.

In the consideration of the motion for judgment non obstante veredicto, plaintiff is of course entitled to every inference in his favor. Irrespective of the question of defendant's negligence, we believe that the testimony of plaintiff discloses such negligence that it should be so declared as a matter of law. By the plaintiff's own testimony, he could, from his position on the safety island see all the way to Lehigh Avenue, one block to the south. Although he testified that he looked at that time and again when stepping into the third traffic lane, he saw nothing. Defendant's bus was there, it struck him immediately. If he had looked, as the law requires, he would have seen the bus approaching at some distance back, particularly as he had crossed over three-quarters of the north bound cartway, which, under the evidence is 32½ feet wide, be-

fore he was struck, and defendant's bus travelling at a speed of 20 to 25 miles an hour. Plaintiff walked between closely packed automobiles and was immediately struck by the front fender of defendant's bus. "He who voluntarily attempts to pass in front of any approaching vehicle, when it is dangerously near, assumes the risk.......Furthermore the driver of an automobile is not bound to anticipate unexpected acts of persons not in the path of travel suddenly placing themselves there." Watson v. Lit Brothers, 288 Pa. 175, 179.

Quoting from the opinion in the case of McAteer v. Highland Coffee Co., 291 Pa. 33, 34: "It is well said in the opinion of the trial judge that, though a driver must approach street crossings in a vigilant manner and with his car under such control that he can promptly stop it if occasion so requires, yet the present driver was not bound to anticipate that a pedestrian might suddenly run out from behind a parked automobile and against the fender of his car."

The same obligation or duty resting on the driver of a motor vehicle, also rests upon a pedestrian who has, before committing himself to the path of traffic, observed that the traffic signal has changed and who steps from between a line of blocked automobiles into an open traffic lane. It was just as strongly contributory negligence on the part of the plaintiff to fail to carry out the same obligations as are invoked against the driver of the bus.

Plaintiff was in a place of safety when on the safety island and stepped therefrom after having observed the traffic signal set against him, and automobiles waiting to proceed, and attempted to pick his way through two lines of automobiles either moving or about to move. He stepped out into an open lane of traffic. It was his duty to look and continue to look while crossing. It is vain to say that he looked and

did not see, when, had he looked he must have seen. There was nothing to obstruct his view. In the language of GAWTHROP, J., in Schulte v. Yellow Cab Co., 104 Pa. Superior Ct. 130, 135: "The only rational conclusion from his own testimony is that he is mistaken when he says he continued to look for approaching traffic or that he stepped in front of the taxicab when it was almost upon him. His conduct in either case is contributory negligence and bars his recovery." See also Letts v. Cole, 310 Pa. 509; Schroeder v. Pittsburgh Railways Co., 311 Pa. 398.

The assignments of error are sustained, judgment reversed and now entered for defendant.