## Guy, Appellant, v. Lane et al.

Argued April 22, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Michael A. Foley,* with him *B. Nathaniel Richter,* for appellant.

*James McG. Mallie,* for appellee.

OPINION BY MR. JUSTICE LINN, May 11, 1942:

Plaintiff appeals from judgment n. o. v. entered for contributory negligence. While crossing Woodland Avenue from the south to the north side, he was picked up on the front of defendant's car. At the point where he was crossing the Avenue, Island Road enters from the south, making a T intersection. One hundred and ninety-three feet east of that point Cobbs Creek Parkway enters Woodland Avenue from the north, also by a T intersection. Plaintiff's testimony, on which his case depends, is somewhat confusing. The evidence of a number of witnesses called on behalf of defendants clearly explains what happened, though, as we are reviewing a judgment n. o. v., we must take the oral evidence most favorably supporting the verdict.

Plaintiff reached Woodland Avenue by Island Road; he stopped on the south side and waited until eastbound

traffic had passed; then he started across. He testified that he also looked to his right (the direction from which defendants' car came) and saw nothing except one car coming out of Cobbs Creek Parkway, 193 feet to his right; this car made a right turn into Woodland Avenue and came toward him. There are eastbound and westbound street car tracks on the Avenue and his evidence would indicate that the automobile was in the westbound tracks. He says that when he reached the middle of the Avenue, this automobile reached the crosswalk; that it stopped and he stopped and that the driver motioned to him to proceed.*

The plaintiff testified that after that he looked toward Philadelphia for other westbound traffic, but saw nothing, relied on his interpretation of the hand signal of the driver and proceeded across Woodland Avenue. He testified: "Q. What part of that car struck you? A. The right side of the car. Q. Was it—what side—what part of the car struck you? A. The front part hit me, but I was nearer to the right. Q. What happened to you? A. Well, it carried me about as far as from here half way across this room. Then when the man stopped the car, of course I fell off, and I tried to get up and I couldn't get up; . . ." It may perhaps be assumed from that statement that he was on the bumper of the car. At another place in his evidence he says he was struck when he was about one step from the curb. He was asked by the learned trial judge: "Were you struck by the car driven by the man who beckoned you to cross the street, or another car? A. I was struck by another car. Q. Where did it come from? A. From around Cobbs Creek." By Cobbs Creek he meant the Parkway from which he saw one car turn into Woodland Avenue. He also testified: "Q. When did you first see the car that struck you? A. The car that struck me? Q. Yes. A. I didn't

---

* The driver of this car testified that he held out his hand as a warning to traffic that he proposed to make a left turn into Island Road.

see it at all until I was struck." He said that he did not know where the car came from: "I don't know a thing about it. I just know I was struck, that is all." He relied on the hand signal of the driver of the standing car. Asked why he understood that to be an invitation to proceed, he replied: "Because I thought it was safe. He said come across. Q. You depended on that gesture by that man, is that correct? A. Well, sure. I thought everything was safe. Q. You thought everything was safe because he made that motion, is that right? A. Yes, that is right."

His evidence is clear about one thing. He stood at a safe place in the middle of the Avenue, with an automobile standing on his right and with a clear view to his right up Woodland Avenue. If he looked, as the law requires, he must have seen what was there, to wit, the approach of the car that struck him. This car was in the northernmost traffic lane of the Avenue; that he fell from it about one step from the curb when the car stopped, is explained by the fact that he was carried there.

It is settled that a pedestrian crossing a street must not only look before he enters but must continue to look as he proceeds and that he will not be heard to say that he looked without seeing what was approaching and plainly visible: *Carnevale v. McCrady-Rodgers Co.,* 318 Pa. 369, 178 A. 472; *Dando v. Brobst,* 318 Pa. 325, 177 A. 831; *Heath v. Klosterman,* 343 Pa. 501, 23 A.2d 209; *Smith v. Wistar,* 327 Pa. 419, 423, 194 A. 486.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE STERN:

I dissent. Plaintiff was crossing Woodland Avenue at a street intersection. He looked before starting and proceeded only after the avenue was clear. When he reached the center of the avenue—the space between the two car tracks—an automobile coming from his right drew up and stopped in the west-bound or far track.

Plaintiff testified that the driver of this automobile waved for him to proceed; accordingly he passed in front of it and, after doing so, had a remaining distance to go, from the west-bound track to the north curb, of 14 feet 8 inches. It is at this juncture that the question of his contributory negligence arises. It was, of course, his duty, as he came into the clear, to look to his right for approaching vehicles. Had he failed to do so and been struck as he emerged from in front of the standing automobile he would clearly have been guilty of contributory negligence. But he says he did look, and saw no vehicle approaching. He successfully negotiated the 14 feet 8 inches to a point within a foot of the curb, where he was struck by the *right* front of defendants' automobile. Defendants' driver admitted that his automobile was running "about two feet away from the curb."

The majority opinion finds that plaintiff was negligent because he did not see defendants' automobile. His failure to do so may be accounted for in either of two ways—defendants' automobile may have come out from in back of the standing automobile, or, what seems more likely from the evidence, it may have been so far up Woodland Avenue at the time plaintiff looked as not to have been an apparent source of danger and therefore did not attract plaintiff's attention. While he was going the 14 feet defendants' automobile would easily have traversed over 200 feet, which would mean that when plaintiff came out from in front of the standing automobile defendants' automobile would have been beyond Cobbs Creek Parkway, which was the next intersecting street. Surely a pedestrian, properly committed to a crossing, may, even though he did see an approaching vehicle in the next block more than 200 feet away, safely ignore it and assume that it would not come ahead and strike him while lawfully on the crossing. At least the question was for the jury. It seems to me that this case is so fairly governed by the recent case of *Harrington v.*

*Pugarelli,* 344 Pa. 204, that any further discussion is unnecessary.

I would reverse the judgment n. o. v. and sustain the verdict.

Mr. Justice MAXEY and Mr. Justice PATTERSON concur in this opinion.