Curran *v.* Battaglini, Appellant.

Argued September 28, 1944.   Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*John Garaguso,* with him *Vincent C. Veldorale,* for appellant.

*James R. Wilson,* with him *Edward C. Stroebele,* for appellee.

OPINION BY BALDRIGE, J., November 15, 1944:
The plaintiff, 67 years of age, on the evening of

September 5, 1941, about 8:15, was in Philadelphia at the southwest corner of Haverford Avenue, 58 to 60 feet wide, and 61st Street, 28 feet wide. As he was about to go north across Haverford Avenue, which runs east and west, he saw two cars, one behind the other, on 61st Street headed north, which had stopped in obedience to a stop sign located on the southeast corner of the intersection of these two streets. As the cars started to move across Haverford Avenue, plaintiff looked west and east and saw no traffic coming and started to walk parallel with the two cars "for protection." The first car gained more momentum than the second car, driven by Alexander Rudolph. As Rudolph approached the north curbline he saw defendant's car for the first time about 50 feet away coming from the east on Haverford Avenue at a "terrific speed—better than 50 miles per hour" and to avoid a collision he "jammed" his brakes. His car stopped 8 to 10 feet from the north curbline, thus permitting the defendant to swerve his car in an arc between his car and the first one, which was then across Haverford Avenue. The plaintiff, when he saw Rudolph's car stop suddenly, made a "jump" to a point three feet from the north curbline when he was struck by defendant's car, which he had not seen previously on account of the Rudolph car.

The dangerous situation was created entirely by defendant's negligent conduct. Plaintiff was confronted with a sudden emergency and evidently instinctively gave a leap to avert an accident. It is true he stated in one part of his testimony that after he stepped onto the street he did not look any more as he had these two cars for protection, but on cross examination he testified as follows: "Well, you were not looking for an automobile? A. Well, certainly I looked. I wouldn't want to walk into one. ...... You didn't look did you? A. Certainly I looked. As I was walking along by the

car, I looked down the street. That is the way traffic comes. There is no traffic coming that way." He explained then that he could not see the defendant's car, as the Rudolph car cut off his vision.

Where inconsistencies and contradictions appear in the testimony of a plaintiff, it is the province of the jury to reconcile the conflicting statements: *Ingram v. Pittsburgh,* 350 Pa. 344, 39 A. 2d 49.

We recognize the rule, upon which defendant relies as controlling, as set forth in *Guy v. Lane et al.,* 345 Pa. 40, 26 A. 2d 327, that a pedestrian crossing a street must not only look before he enters, but must continue to look as he proceeds and he cannot justify his actions by saying that he looked without seeing approaching traffic that was plainly visible. It was not shown that plaintiff violated this rule. His testimony taken as a whole warrants the conclusion that he looked when he stepped off the curb and continued to watch the two cars and everything that was going on to his right until he was suddenly struck. He cannot be said to be guilty of contributory negligence as a matter of law under those circumstances. A plaintiff may not properly be declared guilty of contributory negligence as a matter of law unless the evidence is so clear in that regard that a fair and reasonable individual could not disagree as to its existence: *Pessolano et ux. v. P. T. C.,* 349 Pa. 73, 36 A. 2d 497.

We do not agree with the argument that the plaintiff had the right to rely solely on the two cars to his right "for protection" while proceeding across Haverford Avenue. A pedestrian cannot entrust or delegate his safety to the driver of a car or cars, over which he has no control. The plaintiff at all times was under a duty to exercise diligence for his own safety and to see what was plainly visible, but his failure to see defendant's car was due to Rudolph's car obstructing his view. He could not be held guilty in such circumstances of con-

176

tributory negligence as a matter of law. It was for the jury to say whether its consideration of all the attending facts showed that he failed to exercise reasonable care.

The present case differs from the situation in *Guy v. Lane et al.,* supra, where the plaintiff started to walk across an intersection in front of a stopped car immediately to his right, walked past and beyond the standing car without looking and was struck by defendant's car. In that case if the pedestrian had looked he would have seen the defendant's car approaching from his right.

Judgment of the court below is affirmed.