[Civ. No. 13557. First Dist., Div. One. Dec. 10, 1947.]

FRANKLIN HENDRICKS, Respondent, v. THEOPHANES PAPPAS et al., Appellants.

Leslie C. Gillen for Appellants.

James C. Purcell for Respondent.

BRAY, J.—As shown by the citation in their opening brief of *Bayley* v. *Souza,* 55 Cal.App.2d 776 [131 P.2d 584], defendants are aware of the rule that binds this court on an appeal from an order granting a new trial where granted, as here, on the insufficiency of the evidence. ''The law is well settled that where there is a substantial conflict in the evidence upon disputed issues which are material to the determination of the question of liability, the trial court may exercise its powers to set aside the verdict of a jury and order a new trial; and that under such circumstances its order will not be disturbed on appeal.'' (P. 778.) In view of that awareness, it is difficult to understand why this appeal has been brought.

The action is for injuries claimed to have been received by plaintiff, a pedestrian, when struck by an automobile driven by the defendant Theophanes Pappas, then a minor of the age of 18 years. The defendants Gust Pappas and Eliza Pappas (sued as Jane Doe Pappas), parents of Theophanes, are joined as defendants because they signed his application for a driver's license. However, for convenience, Theophanes will hereinafter be referred to as the sole defendant.

There were no eyewitnesses to the accident except the parties involved. The accident took place on March 26, 1945, at 9:30 a. m., at the intersection of Sixth and Folsom Streets in San Francisco. Sixth Street runs generally north and south, and Folsom Street east and west. Plaintiff testified that he was walking north on the east side of Sixth Street; that he paused at the southeast corner of Sixth and Folsom for the electrically-operated traffic signal to change; that when the signal changed to "Go" he went straight ahead in the marked pedestrian lane; that he looked straight ahead but not to the left or right; that as he crossed a large truck to his left was going in the same direction up Sixth, at the same speed he was walking, and that it afforded him protection; that when he was hit he was crossing the north streetcar track on Folsom; that after being hit he was picked up from the north streetcar track but had been knocked off the pedestrian lane by defendant's car; that the car hit him on his left side and that he did not see it until it was right by him and did not observe its speed. There was no truck parked on the north side of Folsom, extending into the pedestrian lane, but there was one parked "by" the lane.

Defendant directly contradicts plaintiff's version of the accident. He testified (by deposition, as he was then in the Navy) that he was driving south on the west side of Sixth and stopped at the northerly line of Folsom for the signal to change. A truck and trailer going west on Folsom had stopped close to the double line marking the center of Folsom Street. When the light changed in his favor, defendant made a left turn (not prohibited at this intersection) in front of the stopped truck and continued east on Folsom on the south side of that street; that as he passed this truck plaintiff, whom defendant claimed was walking in a southerly direction, stepped out from the rear of that truck and into the left front fender of defendant's car. Defendant saw plaintiff just before he hit him and plaintiff was then

about 45 or 50 feet to the east of the pedestrian lane. It was not raining and the streets were dry. (Plaintiff testified that it was raining.)

Defendant claims that plaintiff was crossing Folsom from north to south at a point 45 to 50 feet easterly and down Folsom from the Sixth Street pedestrian crossing, and at that point plaintiff stepped out from behind a truck and trailer and was hit while south of the center line of Folsom. Plaintiff's claim is that he was going north in the Sixth Street pedestrian lane, and was hit while on the north side of the center line of Folsom. Other evidence in the case supports plaintiff's claim rather than that of defendant. Officer Colligan, who talked to defendant at the scene of the accident, testified from his report made at the time, that defendant told him that plaintiff was walking from the south to the north about 20 feet east of the pedestrian lane when hit. To minimize the effect of Officer Colligan's testimony defendant stresses the fact that the officer did not give defendant a citation for violating the pedestrian's right of way or any other offense. The car had been removed from the point of accident on his arrival, and the officer did not interview plaintiff. Whether his failure to arrest defendant contradicts his testimony is a matter of question. Witness Lewis, an investigator for defendant, who interviewed the officer a month or two after the accident, testified that Officer Colligan told him that the accident had happened 20 feet east of the pedestrian lane; that defendant had then said that plaintiff was walking from north to south; and that if the officer had noted anything in the way of negligence on the part of defendant he would have cited him for a violation. The effect of this testimony, like the officer's failure to arrest defendant, was a matter for the jury. It cannot be said that either or both as a matter of law requires that the officer's testimony be entitled to no weight.

A doctor who examined and took X-rays of plaintiff testified that plaintiff suffered what is commonly referred to as a "bumper fracture" of the left leg. The injury to the left leg is consistent with plaintiff's claim that he was facing north and was hit from his left, and is not consistent with defendant's claim that plaintiff was facing south and was hit from his right. In cross-examination of the doctor the defendant asked the doctor if the injury to plaintiff's left leg could have been sustained by his being hit on the right side

and falling to the pavement on his left knee. The doctor answered that the type of fracture plaintiff sustained was caused "by the knee going inward and the foot going outward" and gave as his opinion that a fall would not cause this result, except under circumstances different from any disclosed here.

It is obvious that there was substantial evidence to support a judgment in plaintiff's favor had one been granted. Plaintiff's testimony alone, if believed, would be sufficient. There was no support of defendant's theory, while the testimony of the police officer and the doctor did support plaintiff's theory.

It is true that plaintiff was a difficult witness and on occasion contradicted himself, but he did not contradict himself upon the important phases of his testimony, such as his position in the crosswalk and the place where he was hit. Some of his difficulty on the stand may have been due to his age. He was 79 at the time of the accident and 80 at the time of the trial, and in view of the testimony of the only disinterested witnesses called, plaintiff's testimony stands up better than that of defendant.

■ Defendant briefly, but without stressing the point, suggests the possibility of plaintiff being guilty of contributory negligence because of his testimony that after he received the "Go" signal and started to cross the street he looked neither to the right nor the left. This question would be one for the trial court to decide, under all the circumstances of the case. It cannot be said as matter of law that such conduct constitutes contributory negligence. Section 476 of the Vehicle Code provided, at the time of the accident, that with the "Go" signal "Vehicular traffic facing the signal shall proceed straight through or turn right or left. . . . But vehicular traffic shall yield the right of way . . . to pedestrians lawfully within the intersection or adjacent crosswalks at the time such signal is exhibited." ■ Every person who is himself obeying the law has a right to presume that every other person will perform his duty and obey the law, and while a person may not blindly rely upon this presumption, but must himself use reasonable care, "Whether or not reasonable care is used under the circumstances, in relying upon this presumption, is a question for the jury." (*White* v. *Davis*, 103 Cal.App. 531, 545 [284 P. 1086]. See, also, *Mann* v. *Scott*, 180 Cal. 550 [182 P. 281]; *Carbaugh* v. *White*

*Bus Line,* 51 Cal.App. 1 [195 P. 1066].) ▮ According to plaintiff's testimony, he had crossed the center of Folsom Street when he was hit. Defendant had no right to drive his car in that area. ". . . a pedestrian who has crossed the center of a street is not guilty of negligence in failing to observe whether vehicles are approaching in a direction in which they have no right to travel." (19 Cal.Jur. 596; *Jones* v. *Key,* 54 Cal.App. 677 [202 P. 478]; *Lewis* v. *Tanner,* 49 Cal.App. 271 [193 P. 287].) Section 560(a) of the Vehicle Code provided: "The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk. . . ."

▮ It is obvious that there is no basis for this appeal. That it was taken merely for purposes of delay in the hope that the litigation would outlive the plaintiff appears from the facts of the case as they appear in the transcript and the delay after filing the notice of appeal. Plaintiff is now 81 years of age. The order granting the new trial was filed December 9, 1946; notice of appeal filed December 11, and notice to the clerk to prepare the transcript on appeal was filed December 16. No arrangements were made by defendant to pay the reporter's fees for the preparation of the transcript until after a motion to dismiss the appeal had been noticed for hearing on the April calendar. The clerk's and reporter's transcript was not filed until July 26, 1947. Defendant's opening brief was filed August 26. No excuse is given by defendant for any of this delay. The opening brief is very sketchy, contains an incomplete summary of the evidence, and points out no substantial grounds for appeal. It cites three cases, which while unquestionably containing good law, are merely space-filling in an appellant's brief, as they support the position of the opposite party. The reply brief, likewise, adds nothing to point out to the court any substantial grounds of appeal.

This appeal is obviously frivolous and could have been taken solely for the purposes of delay. The courts will not permit the appellate processes to be abused in this fashion. Not only has this frivolous appeal unjustly affected the rights of the respondent, but the time of a busy court has been unnecessarily consumed in its consideration. This has necessarily adversely affected the rights of other litigants properly before this court. Under such circumstances the case

falls directly within the following portion of section 957 of the Code of Civil Procedure: "When it appears to the appellate court that the appeal was made for delay, it may add to the costs such damages as may be just." (See, generally, 2 Cal.Jur., p. 977, § 577.)

The order granting a new trial is affirmed, and pursuant to the provisions of section 957 of the Code of Civil Procedure the sum of $100 is assessed against appellants and added to the costs as a penalty for the taking of a frivolous appeal for the purposes of delay.

Peters, P. J., and Ward, J., concurred.