275 P.2d 680

**Iona COOMBS, Plaintiff and Respondent,**

**v.**

**William D. PERRY, Defendant and Appellant.**

**No. 8097.**

Supreme Court of Utah.

Oct. 22, 1954.

 [redacted]

[redacted]

[redacted]

Ray R. Christensen, Salt Lake City, for appellant.

George B. Handy, Ogden, for respondent.

CROCKETT, Justice.

Plaintiff Iona Coombs was struck down by the defendant's car as she walked westward in a pedestrian walk on Washington Boulevard in Ogden. Defendant appeals from a judgment entered on a jury verdict, contending, (1) that plaintiff failed to prove that he was negligent and (2) that the trial court should have ruled as a matter of law that the plaintiff was guilty of contributory negligence in failing to keep out of his way.

[redacted] The basis of defendant's appeal is that the evidence so conclusively supports his views as to these two points that the court was required to so rule as a matter of law and should not have submitted the matter to the jury. The plaintiff having won a judgment below, the verdict is protected by a bulwark of rules firmly established in our law. First, by the general proposition that the judgment and proceedings in the lower court are presumptively correct with the burden upon defendant to show error.[1] Second, where a trial judge has passed upon a question and a jury, presumably fair and impartial, has made a finding, while such is not controlling, it is at least entitled to some consideration and should not be wholly ignored in reviewing the situation and attempting to see, as objectively as possible, whether reasonable minds might so conclude.[2] Third, that the court must review the evidence, together with every inference fairly arising therefrom, in the light most favorable to the plaintiff, and similarly, must consider any lack or failure of evidence in the same light,[3] which we do in reviewing the facts here.

The plaintiff and her friend, Della Robertson, were walking southward on the east side of Washington Boulevard, Ogden's main street, between 26th and 27th Streets (just south of the busiest part of town) in the evening about twilight. As they

1. Burton v. Z. C. M. I., Utah, 249 P.2d 514.

2. Toomer's Estate v. Union Pac. R. Co., Utah., 239 P.2d 163.

3. Toomer's Estate v. Union Pac. R. Co., supra; Great American Indem. Co. v. Berryessa, Utah, 248 P.2d 367; McCollum v. Clothier, Utah, 241 P.2d 468.

reached the mid-block crosswalk, plaintiff looked to the north and saw a bus a block and a half away. She decided to cross the street to see if it was her bus. Miss Robertson in the meantime, waited on the east side of the street. Plaintiff walked west to the middle of the street, stopped and looked north. Seeing no vehicles between herself and the corner, she took a few steps westerly when she suddenly became aware of headlights to the north and was immediately thereafter struck by defendant's automobile. She observed the defendant standing over her and said: "Where on earth did you come from? I didn't see you." Della Robertson watched plaintiff; saw her stop at the center and look to the north; she also says that she did not observe any automobile between the plaintiff and the corner.

Defendant's version was that he drove from the west on 26th Street, turned right and proceeded south on Washington in the right hand lane; that there was a car in front and to his left which obstructed his view so that he did not see the plaintiff, his first warning of the accident being the sound of the impact of his car against her. In conflict with defendant's testimony, however, was that of a Mr. John Burns, who had come on to Washington Boulevard from the east at the same corner, and was driving to the left and rear of the defendant. He testified that there was no vehicle to the front and left of the defendant but that the defendant swerved from the right hand lane to the left as he approached the crosswalk where plaintiff was struck. The parties also disagree as to the manner of impact, the defendant claiming that the plaintiff walked into the side of his car, whereas the plaintiff's evidence is that she was struck on the right leg by the left front part of defendant's car.

■■ It is unnecessary to discuss in any great detail the defendant's contention that there is no evidence of his negligence. It is to be borne in mind that although the motorist and pedestrian are both required to exercise the same standard of care, that of the ordinary prudent person under the circumstances, that standard imposes upon the motorist a greater amount of caution than upon the pedestrian because of the potential danger to others in the operation of an automobile.[4] Inasmuch as it is uncontrovertible that the plaintiff was struck in the marked crosswalk, and the defendant himself says he didn't see her at all, it seems unquestionable that a jury question existed as to whether he kept a proper lookout for pedestrians at the crosswalk, or, even if it were to be assumed that he did so, whether he observed due care in affording the plaintiff the right-of-way to which she was entitled.[5] The language of the Court in the case of Douglas v. Hoff [6] is in point: "Defendant's testimony alone was

4. Blashfield Cyclopedia of Automobile Law and Practice, Sec. 1393.

5. 41–6–78, U.C.A.1953.

6. 82 Cal.App.2d 82, 185 P.2d 607, 608.

sufficient to prove his negligence. He drove a car through a crosswalk and struck a pedestrian without seeing her until he had stopped his car and looked back to see where she lay in the street. If other cars partially obstructed his view of part of the crosswalk, which the jury may have well doubted, he should have been all the more cautious in driving through it. If plaintiff was in the crosswalk * * * defendant's unexplained failure to yield the right of way would have constituted negligence. * * *"

This brings us to the problem of importance: Defendant claims that the plaintiff was guilty of contributory negligence as a matter of law, which if so, would bar her recovery.[7]

The test we apply is whether from all of the evidence, reasonable minds could fairly say that they were not convinced by a preponderance of the evidence that she failed to use reasonable care under the circumstances *and* that this resulted in proximately contributing to cause her injury. Or, to state the proposition affirmatively, was the evidence so clear and compelling that all reasonable minds must say that it was established by a preponderance of the evidence that she was negligent and that such was a proximate cause of her injury?[8]

In contending that this latter question must be answered affirmatively, defendant relies upon the proposition that the plaintiff must be deemed to have seen what was there to be seen, citing a number of cases handed down by this and other courts in support thereof;[9] and also urges that the plaintiff was negligent in leaving a place of safety and walking into the path of his automobile, citing other authorities.[10] With these propositions of law we are in accord. But cases cited by defendant which involve accidents occurring outside of lawfully designated crosswalks are for that reason distinguishable from the instant one; other authorities apply these maxims of law in crosswalk cases and do in fact more closely resemble our situation,[11] but an analysis of such authorities will reveal significant factual differences from the case at bar. Usually the pedestrian had just stepped from the curb into a traffic lane, or out from behind a vehicle or other object obstructing the

7. Stickle v. Union Pacific R. Co., Utah, 251 P.2d 867; Raymond v. Union Pac. R. Co., 113 Utah 26, 191 P.2d 137; Oswald v. Utah Light & R. Co., 39 Utah 245, 117 P. 46.

8. Stickle v. Union Pac. R. Co., supra.

9. Cox v. Thompson, Utah, 254 P.2d 1047; Mingus v. Olsson, 114 Utah 505, 201 P.2d 495; David v. Pinkerton, 199 Wash. 579, 92 P.2d 706.

10. Sant v. Miller, 115 Utah 559, 206 P.2d 719; Thomas v. Goldman, 4 Cir., 167 F. 2d 315; Arlington & Fairfax Motor Transp. Co. v. Simmonds, 182 Va. 796, 30 S.E.2d 581.

11. Mingus v. Olsson, 114 Utah 505, 201 P.2d 495; Guy v. Lane, 345 Pa. 40, 26 A.2d 327; Mertens v. Lake Shore Yellow Cab and Transfer Co., 195 Wis. 646, 218 N.W. 85; Taylor v. Philadelphia Rural Transit Co., 111 Pa.Super. 575, 170 A. 327.

view, into the path of an oncoming automobile.

Typical of such cases is Mingus v. Olsson [12] from this court, relied upon by the defendant. There the deceased and his wife were standing on the curb, where they might not so readily be seen, and where they might remain indefinitely. They stepped from the curb into an unmarked crosswalk; the surviving wife testified that the deceased did not look, but stepped into the path of defendant's oncoming automobile which was undeniably on the street coming toward them. The facts contrasting the Mingus case with the instant one will be apparent to the reader from the discussion herein.

The evidence here is reasonably susceptible of a finding that the defendant was not on Washington Boulevard going toward plaintiff so as to constitute an imminent hazard to her at the instant she made her observation and proceeded westward. This fact is directly supported by the testimony of the plaintiff and Miss Robertson, which the jury were at liberty to believe unless the physical facts or other circumstances rendered it impossible or completely incredible. Plaintiff's statement that she looked, and took "three or four steps" was obviously but an approximation. Such matters are neither measured nor remembered with exactitude. It could have been a little more or a little less. It was not mandatory upon the jury to assume, as defendant attempts to do, that she walked at any particular speed in miles per hour or that any precise number of seconds elapsed. When one starts from a standstill, she does not necessarily do so at any particular speed or momentum. Hence, it would not have been outside the realm of reason for the jury to believe that the time element involved was anywhere from a second or two up to several seconds. Under the estimates given, the crosswalk seems to have been (could have been found to be) about 250 feet from the corner. Based on any of several time, speed, distance hypotheses, well within the limits of reason under the evidence, it is deducible that at the time plaintiff looked to the north the defendant was not on Washington Boulevard proceeding toward plaintiff; and at least was not necessarily so close to plaintiff to be a threat to her safety, and consequently, that she did not step from a place of safety to a place of danger as defendant charges.

The affirmance of the judgment need not, however, rest upon the hypothesis that defendant was not on Washington Boulevard at the time plaintiff stopped and looked. Assuming that the defendant was there and hence that plaintiff either saw or should have seen him, the trial court properly submitted the questions of her negligence and whether it proximately caused her injury to the jury.

█ The salient point is that the plaintiff, as a pedestrian in a marked crosswalk,

12. See note 9, supra.

had the right-of-way. The right-of-way rule simply means this: that if two persons are so proceeding that if they continued their course there would be danger of collision, the disfavored one (defendant) must give way, and the favored one (plaintiff) may proceed; and the favored one (plaintiff) may assume that this will be done. It is of course recognized that the right-of-way rule would not apply if, when the favored one (plaintiff) approached the crossing point, the disfavored one (defendant) was so close that in due care he could not, or should not reasonably be expected to give way.

Assuming that the interval between the time plaintiff stopped and looked, took "three or four steps" and then saw lights to the north and the car "practically upon her," was as little as even four seconds—defendant's own estimate of his speed, 25 miles per hour, which is 36 feet per second, would place him 144 plus feet away (the plus represents whatever distance he was from her when she saw the lights and the car "practically upon her" which would likely be one to two cars lengths) when plaintiff stepped westward on the crosswalk. The average stopping distance at that speed is about 59 feet. The 144 plus feet would therefore be sufficient to permit him to stop two or three times over. Furthermore, under the evidence, the jury could have found that he traveled faster than his own estimate of his speed. If he traveled 30 miles per hour, which is 44 feet per second, 4 seconds would put him 176 plus feet away; at that speed the stopping distance is 79 feet. It should be borne in mind that when defendant was such distance away, the plaintiff was in the middle of the street, clearly within the angle of vision of where the defendant should have been looking, and he was obliged to know that her only purpose in being there facing west was to cross the street. The "must be deemed to have seen what was there to be seen" rule also applies to the defendant; so he must be deemed to have seen her. When she stepped forward west of the center line it would be an immediate warning to him that she was continuing to cross and that she claimed her right-of-way. It therefore seems so plain as to be beyond question that from the distances just postulated, as they reasonably could have been found by the jury, the defendant had ample opportunity to not only safely, but conveniently, slow down, turn to his right, or stop if necessary, to afford the plaintiff the right-of-way and avoid striking her. And the jury could reasonably find that in due care she might rely upon the assumption that he would do so until something occurred to warn her to the contrary.[13] The evidence fails to disclose that any horn was sounded, or that there was any other indication manifest which could have been observed by her to

13. Lang v. Barry, 71 Cal.App.2d 121, 161 P.2d 949. Hendricks v. Pappas, 82 Cal.App. 2d 774, 187 P.2d 436.

indicate that he was not going to afford her the right-of-way until it was too late to do anything to save herself from peril.

In determining whether it must be ruled as a matter of law that the plaintiff herself was negligent which contributed to cause her injury, consideration must be given, not only the fact that she had the right-of-way upon which she could place some reliance, but also that a pedestrain crossing a busy street must be constantly vigilant for her safety with respect to all of the conditions around her. Even if a car is seen approaching, unless it is so positioned as to constitute an immediate hazard to her, she is not necessarily obliged to focus full and undivided attention on that particular car and so calculate her entire conduct as to avoid being struck by it. She need not anticipate that the driver will speed, fail to observe, or to control his car, or fail to afford her the right of way, or otherwise be negligent unless in due care she observes or should observe something to warn her of such improper conduct. This is not to say that a pedestrian may claim a right-of-way in face of danger. She must of course be watching for automobiles or other vehicles on the street, particularly from the north whence traffic was most likely to come. But due care requires that she also keep a lookout ahead for other pedestrians, possible holes or obstructions in the street, and at least remain aware of the possibility of other traffic, lest she be guilty of failing to use reasonable care for her own safety in regard to other dangers. For these reasons she obviously is not necessarily required, and likely in due care cannot, give her entire attention to any one particular point of hazard. All that is required of her is that she use that degree of care which ordinary and reasonable persons usually observe under such circumstances.

Under the evidence here the jury may well have found that when the plaintiff looked to the north there was no car approaching within a distance of immediate hazard to her, and in view of the considerations above discussed as to her right-of-way, and the necessity of remaining aware of other conditions around her, that her conduct in placing some reliance upon the observation she made and proceeding westward across the street was consistent with her duty of ordinary and reasonable care for her safety.

In accord with such thought is the case of Olsen v. Peerless Laundry,[14] wherein the court reiterated the rule that a pedestrian has the duty to look for approaching vehicles, but said that after doing so, whether ordinary care requires him to continue to look in the same direction, or to look again, depends on other attendant circumstances, holding that the question of his contributory negligence was one of fact for the jury. Similarly, in Jensen v. Culbert,[15] where a woman was struck down at an intersection, the court said that there being

14. 111 Wash. 660, 191 P. 756.

15. 134 Wash. 599, 236 P. 101.

nothing to show to the contrary, it must be assumed that she saw the car, but inasmuch as the law gave her the right-of-way and the car must have been more than 100 feet away when she started to cross, it could reasonably be found within her duty of due care to assume that the car would afford her the right-of-way, and concluded that it could not be said as a matter of law that she was guilty of contributory negligence. Another case on this point is Bolster v. Cooper.[16] The plaintiff first saw defendant's car some two blocks away, saw it again when it was 200 feet away, but not again until it was "right upon him." It was urged that his failure to continue to watch and avoid being struck by the car made him guilty of contributory negligence as a matter of law. But the court said that where he had the right-of-way, for the reasons stated in the Jensen case just referred to, the question of his contributory negligence was for the jury.

In order to upset plaintiff's judgment defendant would also have to demonstrate that the evidence showed, with such certainty that all reasonable minds must so conclude, that negligence of the plaintiff concurred in proximately causing her own injury. For the purpose of discussing that point, assume that she was negligent in failing to see defendant. It is of course axiomatic that if the jury could reasonably find that the ac-

cident could just as well have happened without plaintiff's negligence as with it, then the court is not required to rule as a matter of law that negligence of the plaintiff was a proximate cause of the injury.[17]

This court has on numerous occasions dealt with that principle. In the case of Lowder v. Holley [18] defendants strenuously urged that the admitted failure of plaintiff Lowder to see defendant's truck approaching the intersection made plaintiff guilty of contributory negligence as a matter of law which precluded his recovery. But the Court, through Mr. Justice Wade, made very clear the thought above expressed, reasoning that because the evidence was susceptible of a finding that when plaintiff stopped at the intersection the approaching truck was far enough away to have afforded plaintiff an opportunity to safely cross, that the plaintiff " * * * could have assumed and acted on the assumption that the driver of the truck would exercise ordinary and reasonable care in his driving and that it would be safe to cross the intersection. * * * *Under such a state of facts Amasa Lowder's failure to see the truck could in no way have contributed to the accident.*" (Emphasis added.) In other words, even if he had seen the approaching truck, it could have been found, consistent with due care for plaintiff to assume that he would be afforded his right-of-way be-

16. 188 Minn. 364, 247 N.W. 250; see other cases noted in 96 A.L.R. 786.

17. See discussion and cases cited in Martin v. Stevens, Utah, 243 P.2d 747.

18. Utah, 233 P.2d 350, 352.

cause of entering the intersection first, and proceed across. So the accident might well have happened just as it did, whether Lowder saw the defendant or not.

On the same point is the ruling in Hess v. Robinson [19] where it was held that though the plaintiff, driving southward toward an intersection, was negligent in not seeing an ambulance coming into the intersection from the west, whether plaintiff's negligence proximately contributed to cause the collision was a jury question, based on the same reasoning: that even if plaintiff had seen the ambulance, the jury could have found it to be within his duty of due care to think that the ambulance would obey the stop sign, and that he was entitled to proceed until it became apparent to him that the ambulance was not going to do so, so that it was a question of fact whether, even if he had seen it, he would have realized it was not going to obey the stop sign in time to have avoided the accident. Consequently the question of proximate cause, i. e. whether the accident would have happened irrespective of his negligence in failing to see the ambulance, was properly submitted to the jury.[20] Similarly here, the jury could reasonably have viewed the situation thus: that if the plaintiff had looked and seen defendant approaching at a distance of 144 feet or more away, due care would not have required her to do anything other than to proceed forward on the assumption that defendant would afford her the right of way; and that thus her conduct could have been the same, and the accident could have happened just the same, whether she saw him or not; and consequently that her failure to see did not proximately contribute to cause the accident. This would be true without the testimony of the witness Burns hereinabove referred to, but if we consider the additional fact that he said the defendant was not proceeding in the center lane, but in the west lane, and that as he approached the plaintiff in the crosswalk, he swerved to his left and toward her, it is made palpably clear.

█ Consistent with his duty of refusing to take questions of fact from juries except in cases free from doubt,[21] the trial court properly submitted the questions as to defendant's negligence, plaintiff's contributory negligence, and proximate cause to the jury.

Judgment affirmed. Costs to respondent.

McDONOUGH, C. J., WADE, J., and MARTIN M. LARSON, D. J., concur.

HENRIOD, Justice (dissenting).

I respectfully dissent, after examining the facts recounted in the main opinion,

19. 109 Utah 60, 163 P.2d 510.

20. Poulsen v. Manness, Utah, 241 P.2d 152; Hardman v. Thurman, Utah, 239 P.2d 215.

21. See statement of Mr. Justice Frick in Newton v. Oregon Short Line R. Co., 43 Utah 219, 134 P. 567.

viewing them in a light most favorable to plaintiff, and applying the principle that one is negligent in failing to look at what he might see, or having looked, in failing to see that which he should have seen. I think it unreasonable to conclude that the plaintiff, even at twilight, could look northward, see nothing, take a few steps and get hit by a car that had to round a corner 250 feet away after she looked, and without looking again, there being no evidence of excessive speed, without being guilty of contributory negligence.

WOLFE, C. J., being disqualified, did not participate in the hearing of this cause.